UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRIS VAN HOLLEN,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES FEDERAL ELECTION COMMISSION,<br><br>    Defendant. | Civil Action No. |

## COMPLAINT

Plaintiff Chris Van Hollen for his Complaint, states as follows:

1. This action is a challenge under the Administrative Procedure Act (5 U.S.C. §§ 551-706) to a regulation promulgated by the United States Federal Election Commission ("FEC"). The challenged regulation, 11 C.F.R. § 104.20(c)(9), is arbitrary, capricious, and contrary to law because it is inconsistent with a provision of the Bipartisan Campaign Reform Act ("BCRA")—BCRA § 201, codified at 2 U.S.C. § 434(f)—that the regulation purports to implement. As a consequence, the regulation has frustrated the intent of Congress by creating a major loophole in the BCRA's disclosure regime by allowing corporations, including non-profit corporations, and labor organizations to keep secret the sources of donations they receive and use to make "electioneering communications."

2. In a key provision of the BCRA, Congress required disclosure of disbursements made for "electioneering communications," and provided two options for disclosure of the donors to persons making such disbursements. If the disbursement is paid out of a segregated

bank account consisting of funds contributed by individuals, only donors of $1,000 or more to such account must be disclosed. 2 U.S.C. § 434(f)(2)(E). If the disbursement is not paid out of such a segregated bank account, "the names and addresses of *all* contributors who contributed an aggregate amount of $1,000 or more" to the entity paying for the "electioneering communication" must be disclosed. 2 U.S.C. § 434(f)(2)(F) (emphasis added).

3. The FEC's regulation relating to reporting "electioneering communications" purports to provide a different alternative for disclosure of contributors, but one that is not authorized by law. The regulation requires disclosure of donations of $1,000 or more to corporations, including non-profit corporations, or to labor organizations only when the donation "was made for the purpose of furthering electioneering communications" by the corporation or labor organization. 11 C.F.R. § 104.20(c)(9). Thus, rather than require disclosure of all donors of $1,000 or more to a segregated bank account of the corporation or labor organization from which the disbursements were made, or disclosure of "*all* contributors" of $1,000 or more to the corporation or labor organization making the disbursements, 2 U.S.C. § 434(f)(2)(F) (emphasis added), the regulation requires corporations, including non-profit corporations, to disclose only *some* contributors of $1,000 or more, *i.e.*, donors who have manifested a particular state of mind or "purpose."

4. Congress did not include a "state of mind" or "purpose" element tied to "furthering" electioneering communications in the relevant BCRA provision, 2 U.S.C. § 434(f)(2)(F). The FEC, by adding this requirement in 11 C.F.R. § 104.20(c)(9), contravened the plain language of the statute which requires disclosure of "all contributors" of $1,000 or more to the corporation or labor organization when electioneering communications are not paid from a

segregated bank account. The FEC lacked statutory authority to add the "purpose" element to Congress's statutory disclosure regime for those who fund corporate or union "electioneering communications," and the FEC's regulation adding the "purpose" element is, accordingly, arbitrary, capricious, and contrary to law. Further, the FEC's stated rationale for engrafting a "purpose" requirement is itself irrational, arbitrary, and capricious, rendering it contrary to law.

5. Not only is 11 C.F.R. § 104.20(c)(9) inconsistent with the plain language of the statute, it is also manifestly contrary to Congressional intent and has created the opportunity for gross abuse. Congress sought to require more, not less, disclosure of those whose donations fund "electioneering communications." The FEC's unlawful regulation produces a result that frustrates Congress's objective.

6. Real world experience confirms this conclusion. Relying on the FEC's faulty regulations, many non-profit corporations which spent millions of dollars on "electioneering communications" in the 2010 campaign did not disclose the names of contributors whose donations they used to make "electioneering communications," contrary to the statute and the intent of Congress. As a result, corporations, including non-profits, using bland and unrevealing names, expended millions of dollars on "electioneering communications" to support or attack federal candidates in circumstances where the source(s) of the money spent is unknown to the electorate and to the candidates vying for federal office.

## JURISDICTION AND VENUE

7. This action arises under the Federal Election Campaign Act of 1971 ("FECA"), Pub. L. No. 92-225, 2 U.S.C. §§ 431 *et seq.*, as amended by the Bipartisan Campaign Reform

Act of 2002 ("BCRA"), Pub. L. No. 107-155; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-706; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

8. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e) because the defendant is a United States agency and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**PARTIES**

9. Plaintiff Chris Van Hollen is a Member of the United States House of Representatives from the 8th Congressional District of the State of Maryland. Rep. Van Hollen was elected in 2002 and re-elected every two years thereafter. He next faces re-election in November 2012 and is planning to run for re-election.

10. Rep. Van Hollen is a United States citizen, elected Member of Congress, candidate for re-election to Congress, voter, recipient of campaign contributions, fundraiser, and member of national and state political parties. He faces personal, particularized, and concrete injury from the FEC's promulgation of a regulation (11 C.F.R. § 104.20(c)(9)) that is contrary to the letter and spirit of the BCRA in that it allows corporations and labor organizations to spend unlimited amounts of money on "electioneering communications" without disclosing the identities of persons whose money funds these communications, as required by law.

11. In particular, as a federal officeholder and as a future candidate for federal office, Rep. Van Hollen and his campaign opponents are and will be regulated by the FECA and the BCRA, including 2 U.S.C. § 434(f). The challenged regulation infringes Rep. Van Hollen's

protected interest in participating in elections untainted by expenditures from undisclosed sources for "electioneering communications." If 11 C.F.R. § 104.20(c)(9) stands, Rep. Van Hollen likely will be subjected to attack ads or other "electioneering communications" financed by anonymous donors, and will not be able to respond by, *inter alia*, drawing to the attention of the voters in his district the identity of persons who fund such ads. Rep. Van Hollen, as a citizen and voter, also has an informational interest in disclosure of the persons whose donations are used to fund "electioneering communications" by corporations and labor organizations.

12. Defendant United States Federal Election Commission is a federal agency created pursuant to the Federal Election Campaign Act, 2 U.S.C. § 437c.

## FACTS

### The FEC Adds A New "Purpose" Requirement To Its Reporting Regulation

13. In 1972, Congress enacted the FECA.

14. In 2002, Congress amended the FECA by enacting the BCRA.

15. The BCRA defines an "electioneering communication" to mean any broadcast, cable, or satellite communication which refers to a clearly identified candidate for federal office, is made within 30 days before a primary election or 60 days before a general election in which the identified candidate is seeking office, and in the case of Congressional and Senate candidates, is geographically targeted to the relevant electorate. BCRA § 201, 2 U.S.C. § 434(f)(3). A communication may qualify as an "electioneering communication" even if the communication was not made *for the purpose* of supporting or opposing an identified candidate, was not

intended to influence a federal election, or did not otherwise amount to express advocacy, as long as it meets the statutory definition of "electioneering communication."

16. The BCRA, as enacted, prohibited corporations and labor organizations from making "electioneering communications." *See* BCRA § 203, 2 U.S.C. § 441b(b)(2).

17. On December 10, 2003, the Supreme Court rejected a facial challenge to BCRA § 203 in *McConnell v. FEC*, 540 U.S. 93. On June 25, 2007, the Supreme Court held in *FEC v. Wisconsin Right to Life*, 551 U.S. 449 ("*WRTL*"), that BCRA § 203 was unconstitutional as applied to expenditures by corporations for advertisements that did not constitute "express advocacy" or the functional equivalent of express advocacy. *See id.* at 470-76. The court held, "[A]n ad is the functional equivalent of express advocacy only if the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *Id.* at 469-70.

18. As a result of *WRTL*, it became permissible for corporations and labor organizations to make expenditures for "electioneering communications" that did not constitute "express advocacy" or its "functional equivalent."

19. In response to *WRTL*, the FEC issued a Notice of Proposed Rulemaking, proposing changes to its regulations relating to "electioneering communications." 72 Fed. Reg. 50261 (Aug. 31, 2007). Although the plaintiffs in *WRTL* had not challenged the BCRA's disclosure requirements for "electioneering communications," and the Supreme Court made no ruling in that case concerning those requirements, the FEC proposed to revisit "the rules governing reporting of electioneering communications," 72 Fed. Reg. 50262, *i.e.*, 11 C.F.R.

§ 104.20. The FEC acknowledged that the BCRA required corporations and labor organizations to report "'the name and address of *each* donor who donated an amount aggregating $1,000 or more' to the corporation or labor organization during the relevant reporting period," *id.* at 50271 (emphasis added), but unaccountably sought comment on whether it should add a new rule for corporations and labor organizations: "Should the Commission limit the 'donation' reporting requirement to funds that are donated for the express purpose of making electioneering communications?" *Id.*

20. On December 26, 2007, the FEC promulgated revised regulations that modified the "electioneering communications" reporting requirements for corporations and labor organizations. Specifically, the FEC added paragraph (c)(9) to 11 C.F.R. § 104.20, which provides that when corporations and labor organizations make expenditures above a certain threshold amount for "electioneering communications" that are not made out of a segregated account, they must disclose the following information:

> If the disbursements were made by a corporation or labor organization pursuant to 11 CFR 114.15, the name and address of each person who made a donation aggregating $1,000 or more to the corporation or labor organization, aggregating since the first day of the preceding calendar year, which was *made for the purpose of furthering electioneering communications*.

72 Fed. Reg. 72913 (emphasis added).

21. The FEC also published an "Explanation and Justification for Final Rules on Electioneering Communications" ("E & J"), 72 Fed. Reg. 72899 (Dec. 26, 2007), which relevantly stated with regard to disclosure of donors to a corporation or labor organization making disbursements for "electioneering communications" out of funds that are not in a segregated bank account:

A corporation's general treasury funds are often largely comprised of funds received from investors such as shareholders who have acquired stock in the corporation and customers who have purchased the corporation's products or services, or in the case of a non-profit corporation, donations from persons who support the corporation's mission. These investors, customers, and donors do not necessarily support the corporation's electioneering communications. Likewise, the general treasury funds of labor organizations and incorporated membership organizations are composed of member dues obtained from individuals and other members who may not necessarily support the organization's electioneering communications.

Furthermore, witnesses at the Commission's hearing testified that the effort necessary to identify those persons who provided funds totaling $1,000 or more to a corporation or labor organization would be very costly and require an inordinate amount of effort. Indeed, one witness noted that labor organizations would have to disclose more persons to the Commission under the [Electioneering Communication ("EC")] rules than they would disclose to the Department of Labor under the Labor Management Report and Disclosure Act.

For these reasons, the Commission has determined that the policy underlying the disclosure provisions of BCRA is properly met by requiring corporations and labor organizations to disclose and report only those persons who made donations for the purpose of funding ECs. Thus, new section 104.20(c)(9) does not require corporations and labor organizations making electioneering communications permissible under 11 CFR 114.15 to report the identities of everyone who provides them with funds for any reason. Instead, new section 104.20(c)(9) requires a labor organization or a corporation to disclose the identities only of those persons who made a donation aggregating $1,000 or more specifically for the purpose of furthering ECs pursuant to 11 C.F.R. 114.15, during the reporting period. ... Donations made for the purpose of furthering an EC include funds received in response to solicitations specifically requesting funds to pay for ECs as well as funds specifically designated for ECs by the donor.

In the Commission's judgment, requiring disclosure of funds received only from those persons who donated specifically for the purpose of furthering ECs appropriately provides the public with information about those persons who actually support the message conveyed by the ECs without imposing on corporations and labor

> organizations the significant burden of disclosing the identities of the vast numbers of customers, investors, or members, who have provided funds for purposes entirely unrelated to the making of ECs.

72 Fed. Reg. 72911.

22. While the E & J refers to the FEC's mistaken understanding of the "policy underlying the disclosure provision of BCRA," the FEC does not even attempt to ground the regulation's "purpose of further electioneering communications" requirement in the actual statutory language Congress enacted in the BCRA, which requires that the identity of "all contributors" of $1,000 or more must be disclosed when the disbursement for an "electioneering communication" is not made from a separate account.

23. The E & J purports to address a "burden" problem, but Congress did not authorize the FEC to consider the issue of "burden" or to promulgate regulations that take "burden" into account.

24. Even apart from the direct and irreconcilable conflict between the statute and 11 C.F.R. § 104.20(c)(9), the E & J's reasoning is irrational, arbitrary, and capricious on its own terms.

25. First, the FEC simply accepted, unquestioningly, the unsupported, self-serving, and conclusory comments of some parties in the Rulemaking as to the existence and extent of the supposed burden on corporations. The FEC did not make any specific factual findings about any such burden. Had the FEC conducted an inquiry, it would likely have found that the alleged burdens were inconsequential for most if not all corporations and labor organizations.

26.     Second, in any event, the "purpose" test is unnecessary and irrational to alleviate any actual burden that BCRA § 201, 2 U.S.C. § 434(f), may impose on corporations and labor organizations that wish to make disbursements for "electioneering communications." If a corporation finds compliance with § 434(f)(2)(F)—the "all contributors" provision—too troublesome, it can establish and pay "electioneering communications" expenses out of a segregated bank account consisting of funds donated by individuals, and disclose only the contributors to that account, as the statute expressly allows, 2 U.S.C. § 434(f)(2)(E).

27.     The 'purpose' test is further irrational because it is unnecessary to impose that test in order to exclude funds such as corporate revenues from the sales of products and services, the proceeds of debt and equity issuances, and bank loans. It would suffice simply for the regulation to say that those sources of corporate funds are excluded.

28.     The "purpose" test is further unnecessary and irrational as applied to not-for-profit corporations, which, real-world experience shows, account for a large portion of the "electioneering communications" that have been made.[1] Moreover, non-profit corporations presumably only make "electioneering communications" that are consistent with their mission, and thus the FEC's purported concern that persons contributing funds to a non-profit corporation might "not necessarily support the corporation's electioneering communications" is irrational.

---

[1] In 2010, all of the top ten spenders on "electioneering communications" were either "501(c)" or "527" organizations. *See 2010 Outside Spending by Groups*, CENTER FOR RESPONSIVE POLITICS, http://www.opensecrets.org/outsidespending/summ.php?cycle=2010&disp=O&type=E&chrt=D (Electioneering Communications filter).

### Exploiting 11 C.F.R. § 104.20(c)(9), Corporations Stop Identifying Donors

29.     In the aftermath of the FEC's promulgation of 11 C.F.R. § 104.20(c)(9), corporations have exploited the enormous loophole it created.

30.     In 2010, persons making "electioneering communications" disclosed the sources of less than 10 percent of their $79.9 million in "electioneering communication" spending. The ten "persons" that reported spending the most on "electioneering communications" (all of them corporations) disclosed the sources of a mere five percent of the money spent. Of these ten corporations, only three disclosed any information about their funders.[2]

31.     Not surprisingly, as a result of the regulation, the public record reflects little or no disclosure of the numerous contributors to non-profit corporations that made substantial electioneering communications in the 2010 congressional races. The U.S. Chamber of Commerce, a § 501(c) corporation, spent $32.9 million in electioneering communications in the 2010 congressional elections, and disclosed none of its contributors; American Action Network, a § 501(c) corporation, spent $20.4 million in electioneering communications in the 2010 congressional elections, and disclosed none of its contributors; Americans for Job Security, a § 501(c) corporation, spent $4.6 million in electioneering communications in the 2010 congressional elections, and disclosed none of its contributors; Center for Individual Freedom, a § 501(c) corporation, spent $2.5 million in electioneering communications in the 2010 congressional elections, and disclosed none of its contributors; American Future Fund, a § 501(c) corporation, spent $2.2 million in electioneering communications in the 2010 congressional

---

[2]     *Id.*

elections, and disclosed <u>none</u> of its contributors; <u>CSS Action Fund</u>, a § 501(c) corporation, spent <u>$1.4 million</u> in electioneering communications in the 2010 congressional elections, and disclosed <u>none</u> of its contributors; <u>Americans for Prosperity</u>, a § 501(c) corporation, spent <u>$1.3 million</u> in electioneering communications in the 2010 congressional elections, and disclosed <u>none</u> of its contributors; <u>Arkansans for Change</u>, a § 501(c) corporation, spent <u>$1.3 million</u> in electioneering communications in the 2010 congressional elections, and disclosed <u>none</u> of its contributors; <u>Crossroads GPS</u>, a § 501(c) corporation, spent <u>$1.1 million</u> in electioneering communications in the 2010 congressional elections, and disclosed <u>none</u> of its contributors. An additional 15 section 501(c) corporations that made electioneering communications in the 2010 congressional elections disclosed <u>none</u> of their contributors.

32. The corporation that spent the most money in 2010 to fund "electioneering communications," the U.S. Chamber of Commerce, publicly stated on January 13, 2011, that even though it will continue to make "electioneering communications," it will continue not to disclose any of its contributors.[3]

## COUNT I: DECLARATORY JUDGMENT

33. Paragraphs 1-32 are incorporated herein. For the reasons alleged, 11 C.F.R. § 104.20(c)(9) is arbitrary, capricious, an abuse of discretion, and contrary to law. 5 U.S.C. § 706(2)(A).

34. The FEC's action on December 26, 2007, promulgating 11 C.F.R. § 104.20(c)(9), was in excess of its statutory jurisdiction, authority, and right. 5 U.S.C. § 706(2)(C).

---

[3] *U.S. Chamber Plans to Continue Practice of Not Disclosing Contributors*, BNA MONEY AND POLITICS REPORT, (Jan. 13, 2011).

35. Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaration that 11 C.F.R. § 104.20(c)(9) is unlawful and invalid.

36. Pursuant to 28 U.S.C. § 2202, Plaintiff requests that the Court remand this matter to the FEC for such further action as may be appropriate.

## REQUESTED RELIEF

37. Plaintiff requests:

   A. That the Court declare that 11 C.F.R. § 104.20(c)(9) is contrary to law, arbitrary and capricious, and invalid;

   B. That the Court remand 11 C.F.R. § 104.20(c)(9) to the FEC for further action consistent with such declaration;

   C. That the Court retain jurisdiction over this matter to monitor the FEC's timely and full compliance with this Court's judgment; and

   D. That the Court grant such other and further relief as it deems proper.

Dated: April 21, 2011

/s/ R. M. Witten
Roger M. Witten (Bar No. 163261)
Brian A. Sutherland
Fiona J. Kaye
WILMER CUTLER PICKERING
   HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

Fred Wertheimer (Bar No. 154211)
DEMOCRACY 21
2000 Massachusetts Ave, N.W.
Washington, D.C. 20036
(202) 355-9610

Donald J. Simon (Bar No. 256388)
SONOSKY CHAMBERS SACHSE
  ENDRESON & PERRY, LLP
1425 K Street, N.W.
Suite 600
Washington, D.C. 20005
(202) 682-0240

Trevor Potter (Bar No. 413778)
J. Gerald Hebert (Bar No. 447676)
Paul S. Ryan (Bar No. 502514)
Tara Malloy (Bar No. 988280)
CAMPAIGN LEGAL CENTER
215 E Street N.E.
Washington, D.C. 20002
(202) 736-2200