UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CHRIS VAN HOLLEN, <br><br>     Plaintiff, <br>v. <br><br>FEDERAL ELECTION COMMISSION, <br><br>     Defendant, <br>and <br><br>CENTER FOR INDIVIDUAL FREEDOM, <br><br>     Intervenor-Defendant. | Civ. A. No. 1:11-cv-00766 (ABJ) |

**REPLY BRIEF OF THE CENTER FOR INDIVIDUAL FREEDOM
TO DEFENDANT FEDERAL ELECTION COMMISSION'S RESPONSE AND
PLAINTIFF VAN HOLLEN'S OPPOSITION
TO CFIF'S MOTION TO INTERVENE AS A DEFENDANT**

The Center for Individual Freedom ("CFIF") submits this reply memorandum in further support of its motion for leave to intervene as a defendant. Defendant Federal Election Commission ("FEC") does not oppose intervention, nor does it claim to adequately represent the interests of CFIF. Instead, the only opposition is by Plaintiff Van Hollen, who contends that CFIF lacks an adequate interest in this case and that the FEC is an adequate representative of CFIF, even though the FEC itself makes no such claim. CFIF refutes Van Hollen's arguments below.

First, however, CFIF notes that neither the FEC nor Van Hollen identify any harm that will result from CFIF's intervention. The absence of harm is significant because federal policy favors broad participation by those who may be affected by litigation, and Federal Rule of Civil Procedure 24 is construed flexibly and liberally to advance that policy. *See, e.g., Am. Horse*

1

*Protection Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 157 (D.D.C. 2001) (Rule 24 provides a "liberal and forgiving standard"); *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) (explaining that "the D.C. Circuit has taken a liberal approach to intervention" and "the purposes of Rule 24 [will be] best served by permitting the prospective intervenors to engage in all aspects of this litigation"). Indeed, this policy requires that all "doubts [be] resolved in favor of the proposed intervenor." *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999); *see also In re Vitamins Antitrust Litigation*, No. MISC 99-197, 2001 WL 34088808, at *3 (D.D.C. Mar. 19, 2001) (liberal policy requires "all doubts resolved in favor of permitting [permissive] intervention"); *Thomas v. Henderson*, 297 F. Supp. 2d 1311, 1326 (S.D. Ala. 2003) (same); *United States v. Marsten Apartments, Inc.*, 175 F.R.D. 265, 267 (E.D. Mich. 1997) (applying same principle to all methods of intervention under Rule 24). Also, a "more lenient standard" applies where "the case involves a public interest question." Moore's Federal Practice § 24.03.

Thus, CFIF's motion advances settled federal policy. Moreover, it easily satisfies the requirements of Rule 24 since, as CFIF demonstrates below: (1) it has a clear and direct interest in this case, confirmed by the fact that the Complaint expressly alleges, Compl. ¶¶ 29, 31 (Doc. 1), that CFIF's conduct is permitted only by the challenged regulation and otherwise would be unlawful; and (2) the FEC does not adequately represent CFIF's interests.

1.      **CFIF'S INTEREST IN THESE PROCEEDINGS IS CLEAR.**

This lawsuit necessarily threatens CFIF's interests. Indeed, Plaintiff's argument that CFIF has not asserted "a legally protected right or interest that this litigation would impair or impede," Pl. Opp. at 2 (Doc. 21), ignores that his own Complaint pleads that CFIF relied on this regulation when it "spent $2.5 million in electioneering communications in the 2010

2

congressional elections." Compl. ¶¶ 29, 31. Plaintiff does not deny that those communications, which the Complaint seeks to burden, are protected by fundamental law, namely the First Amendment. By Plaintiff's own admission, CFIF currently relies on the regulation that he seeks to vacate. *See, e.g.*, *Military Toxics Project v. E.P.A.*, 146 F.3d 948, 954 (D.C. Cir. 1998) ("These companies are directly subject to the challenged Rule, and they benefit from the EPA's 'intended use' interpretation . . . that the MTP is challenging. . . . [They] would suffer concrete injury if the court grants the relief the petitioners seek."); *County of San Miguel v. MacDonald*, 244 F.R.D. 36, 44-45 (D.D.C. 2007) ("If the Court were to grant the relief the plaintiffs seek, the threat of greater regulation of the lands the intervenor-applicants' members use and rely upon would be imminent and result in concrete injury.") There can be no question, then, that CFIF has legally protected interests at stake in this litigation.

Plaintiff characterizes CFIF's interest in defending the regulation as solely for the purpose of making constitutional arguments that cannot sustain the challenged regulation. Pl. Opp. at 2-4. If that were so, it would go to whether CFIF's arguments should prevail on the merits, not to whether it should be allowed to make them in the first place. But the truth is that the First Amendment has pervasive implications for this case, though Plaintiff seeks to deny them and the FEC has institutional reasons not to emphasize them.

First, Plaintiff seeks to vacate a regulation that, as his Complaint pleads, was enacted in direct response to the constitutional concerns identified by the Supreme Court in *McConnell v. FEC*, 540 U.S. 93 (2003), and *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007). Compl. ¶¶ 17-19. Indeed, the First Amendment *always* bears on the proper interpretation of campaign finance disclosure statutes and regulations. *See, e.g.*, *SpeechNow.org v. FEC*, 599 F.3d 686, 696 (D.C. Cir. 2010) ("Disclosure requirements . . . burden First Amendment

3

interests."); *AFL-CIO v. FEC*, 333 F.3d 168, 179 (D.C. Cir. 2003) ("[T]he Commission must attempt to avoid unnecessarily infringing on First Amendment interests."); *see also Buckley v. Valeo*, 424 U.S. 1, 64 (1976) ("We long have recognized that significant encroachments on First Amendment rights of the sort that compelled disclosure imposes cannot be justified by a mere showing of some legitimate governmental interest.").

Second, Plaintiff contends that constitutional concerns were not part of the administrative record and, therefore, may not serve as a basis for justifying the regulation. Pl. Opp. at 3. The factual predicate for Plaintiff's contention is simply untrue. The FEC sought comments about the "First Amendment . . . concerns" implicated by Section 201's reporting requirements following the Court's decision in *Wisconsin Right to Life*. Notice of Proposed Rulemaking on Electioneering Commc'ns, 72 Fed. Reg. 50261, 50262 (Aug. 31, 2007). It then considered the First Amendment concerns identified in the comments that "the only constitutional way to protect" the privacy and anonymity interests of contributors would be by eliminating "disclaimers [and] reporting" associated with "electioneering communications" that were specifically authorized by the Supreme Court. Final Rule and Explanation and Justification on Electioneering Commc'ns, 72 Fed. Reg. 72899, 72901 (Dec. 26, 2007). In the end, the FEC settled on "reporting requirements" that it believed were "narrowly tailored" in a "constitutional way" to "not create unreasonable burdens on the privacy rights of donors." *Id.* Indeed, it is likely the case that, absent the construction of Section 201 adopted by the FEC in this regulation, the statute would be unconstitutional.

Contrary to Plaintiff's assertion, therefore, the FEC appropriately considered the First Amendment issues when promulgating the regulation and any review of that regulation must necessarily take into consideration those same constitutional concerns. CFIF, accordingly, does

4

not seek to "transmogrify" Plaintiff's case, *see* Pl. Opp. at 3; it instead seeks to address the statutory, regulatory, and constitutional issues that Plaintiff has placed before this Court for consideration.[1]

Third, Plaintiff asserts that the challenged regulation is unlawful because simple "statutory construction" supposedly shows that the FEC's concern with the burdens of disclosure was unauthorized by and contrary to the statute. *Id.* However, CFIF will show that First Amendment considerations require that the statute be construed to permit such consideration and, indeed, that the statute would be unconstitutional if applied to prevent consideration of such burdens. This refutation of Plaintiff's favored statutory construction is entirely proper. Whether it prevails, of course, is a matter for the merits.

### 2. THE FEC CANNOT ADEQUATELY REPRESENT CFIF'S INTERESTS.

Plaintiff incorrectly argues that the FEC should be considered "presumptively" adequate to represent CFIF's interests, *id.* at 4-5, something not even the FEC has claimed. However, this "presumption" of adequacy only arises where the government agency is "charged by law" with representing the absentee's interests. *Dimond v. Dist. of Columbia*, 792 F.2d 179, 192-93 (D.C. Cir. 1986) (finding no presumption); *see also NRDC v. E.P.A.*, 99 F.R.D. 607, 610 n.5 (D.D.C. 1983) (same). As explained in CFIF's Motion to Intervene, the exact opposite is true here: the FEC's "business is to censor" and regulate entities engaging in core political speech, not to defend their interests in legal proceedings. Mot. to Intervene at 9 (Doc. 15).

---

[1] Plaintiff suggests that the same constitutional interests advanced by CFIF with respect to intervention as of right are likewise insufficient to support CFIF's request for permissive intervention. *See* Pl. Opp. at 5. For the same reasons identified above, however, this conclusion is erroneous as such interests clearly satisfy the lenient standard for permissive intervention. *See, e.g., Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007) ("[T]he court enjoys considerable latitude under Rule 24(b).").

In reality, the showing necessary to satisfy this element of Rule 24 is alternatively described as "minimal," *Trbovich v. UMW*, 404 U.S. 528, 540 (1972), "low," *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 n.7 (D.C. Cir. 2003), and "*de minimis*," *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 19 (D.D.C. 2010), with the analysis given a "liberal application in favor of permitting intervention." *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967). Indeed, because "intervention 'shall' be permitted 'unless' the applicant's interest is already adequately represented," *Fund for Animals*, 322 F.3d at 736 n.7, Plaintiff has the burden of showing that the FEC's representation will be adequate. *United States v. AT&T*, 642 F.2d 1285, 1293 (D.C. Cir. 1980).

In any event, it would be an "impossible task" for the FEC to represent the "more narrow and parochial" interests of a private party like CFIF while "burdened with the responsibility of balancing multiple competing public interests." *Dimond*, 792 F.2d at 193 (internal quotation omitted); *Wildearth Guardians*, 272 F.R.D. at 17. This is because government agencies are "usually charged with 'represent[ing] the interests of the American people,'" *County of San Miguel*, 244 F.R.D. at 48, and have a "mandate to design and enforce an entire regulatory system in the public interest," *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6, 8 (D.D.C. 1993), "whereas aspiring intervenors . . . are dedicated to representing their personal interests or the interests of their members or members' businesses," *County of San Miguel*, 244 F.R.D. at 48. In fact, the FEC would be "shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest." *Dimond*, 792 F.2d at 193. The FEC's response (or lack thereof) to this point only foreshadows the divergent interests that will almost certainly manifest themselves as the litigation progresses.

Moreover, CFIF's intervention in this matter is essential to ensure that the Court receives a "full ventilation" of the First Amendment issues bearing on the challenged regulation, *Nuesse*, 385 F.2d at 704, and also to make certain that such constitutional considerations are given the "primacy" to which they are entitled. *Fund for Animals*, 322 F.3d at 736. CFIF's participation here is precisely the type of "vigorous and helpful supplement" that would benefit the Court's analysis of the challenged regulation. *NRDC v. Costle*, 561 F.2d 904, 913-14 (D.C. Cir. 1977). As a member of the regulated community, CFIF also is uniquely qualified to discuss the impact of this action on entities regularly exercising their right to speak out on matters of public concern.

CFIF's position vis-à-vis this litigation stands in stark contrast with the FEC, which has a long and well-documented history of hostility toward First Amendment rights. This is particularly true in the disclosure context, where the FEC has often demonstrated an "appalling disregard for the needs of the free and open political process safeguarded by the First Amendment." *FEC v. Hall-Tyner Election Campaign Comm.*, 678 F.2d 416, 424 (2d Cir. 1982); *see also Citizens United v. FEC*, 130 S. Ct. 876, 896 (2010) ("the FEC's business is to censor, [and] there inheres the danger that [it] may well be less responsive . . . to the constitutionally protected interests in free expression") (internal quotation omitted); *AFL-CIO*, 333 F.3d at 172 (FEC's "interpretation raises serious First Amendment problems"); *Chamber of Commerce v. FEC*, 69 F.3d 600, 605 (D.C. Cir. 1995) (FEC's interpretation "presents serious constitutional difficulties" and was an "obvious . . . burden" on First Amendment rights); *FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 390 (D.C. Cir. 1981) (the FEC's attempt to draw the judiciary into its "unprecedented investigation . . . intrudes upon centrally important first amendment associational and advocacy interests"). These cases illustrate CFIF's justifiable

concern that the FEC may fail to vigorously advance the critical First Amendment issues this case raises and that CFIF is committed to presenting to the Court.

Plaintiff's arguments ring particularly hollow here in light of his involvement in *RNC v. FEC*, No. 08-1953 (D.D.C., complaint filed on Nov. 13, 2008), where his co-intervenor advanced similar arguments about the FEC's inability to "adequately represent . . . the 'more narrow' interests of a nongovernmental intervenor" in attempting to intervene on the agency's behalf.[2] *See* Reply Mem. of Law in Support of the Democratic National Committee's ("DNC") Mot. to Intervene as a Defendant at 4-5 (Doc. 28), *RNC v. FEC*, Civ. No. 08-1953 (D.D.C. 2009). There, Judges Brett M. Kavanaugh, Richard J. Leon, and Rosemary M. Collyer granted intervention even though – unlike here – the FEC objected to the DNC's intervention as of right "because the Commission adequately represents the interest of the DNC in defending the constitutionality" of the challenged law. Order, *RNC v. FEC*, Civ. No. 08-1953 (Doc. 30, entered Feb. 19, 2009) (granting the DNC's motion); Def. FEC's Response to the Mots. to Intervene of Rep. Chris Van Hollen and the DNC at 1 (Doc. 24), *RNC v. FEC*, Civ. No. 08-1953 (D.D.C. 2009) (internal quotations and brackets omitted). Here, however, CFIF's motion to intervene, which is not contested by the FEC, presents a far easier case for the Court to grant intervention.[3]

---

[2] Plaintiff also intervened in the same case, but he had an independent basis for doing so outside of Rule 24. *See* Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107-155, § 403(b), 116 Stat. 81, 114 (2002).

[3] This Court need not consider the FEC's speculative claim that CFIF would not have the right to appeal an adverse judgment under certain circumstances as that issue has no bearing on CFIF's intervention motion. *See* FEC Response at 1-2 (Doc. 18). Any future question as to CFIF's ability to appeal will be highly fact-dependent and will be resolved by the Court of Appeals. In any event, the FEC does not dispute that CFIF *would* have the right to appeal a remand order in this case if it is "final," meaning that it does not require "significant further proceedings" before the agency. *Id.* at 2 (quoting *Smoke v. Norton*, 252 F.3d 468, 472 (D.C. Cir. 2001) (Henderson, J., concurring)). Should Plaintiff prevail on his request for vacatur of the

Finally, as noted at the outset, federal policy strongly favors broad participation in litigation, particularly where, as here, broad issues are at stake. In the absence of any demonstrated harm from CFIF's participation, any doubt must be resolved in favor of its intervention.

## CONCLUSION

For these reasons and those expressed in the Motion to Intervene, CFIF respectfully requests that the Court grant CFIF's leave to intervene as a party defendant.

July 11, 2011                                   Respectfully submitted,

                                           /s/ Thomas W. Kirby
                                   Jan Witold Baran (D.C. Bar No. 233486)
                                       E-mail: jbaran@wileyrein.com
                                   Thomas W. Kirby (D.C. Bar No. 915231)
                                       E-mail: tkirby@wileyrein.com
                                   Caleb P. Burns (D.C. Bar No. 474923)
                                       E-mail: cburns@wileyrein.com
                                   Andrew G. Woodson (D.C. Bar No. 494062)
                                       E-mail: awoodson@wileyrein.com
                                   WILEY REIN LLP
                                   1776 K St. NW
                                   Washington, D.C. 20006
                                   202.719.7000

                                   *Counsel for Center for Individual Freedom*

---

regulation, the remand order almost certainly would be "final" because it would "leave[] solely 'ministerial' proceedings to be conducted" by the agency required to vacate the regulation. *See In re St. Charles Pres. Investors, Ltd.*, 916 F.2d 727, 729 (D.C. Cir. 1990); *see also, e.g.*, *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 466 F.3d 134, 137 (D.C. Cir. 2006) (considering appeal of decision "declar[ing] the regulations unlawful"); *Citizens Coal Council v. Norton*, 330 F.3d 478, 479 (D.C. Cir. 2003) (considering appeal of "District Court's ruling that the regulation was invalid"). The FEC's potential failure to take such an appeal as a result of a deadlocked vote by the FEC Commissioners is additional evidence of the FEC's inadequate representation of CFIF's interests. *See Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997) ("a decision not to appeal by an original party to the action can constitute inadequate representation of another party's interest") (internal quotations omitted).