## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRIS VAN HOLLEN, | |
| *Plaintiff,* | Civil Action No. 1:11-cv-00766 (ABJ) |
| v. | |
| FEDERAL ELECTION COMMISSION, | |
| *Defendant.* | |
| HISPANIC LEADERSHIP FUND, | |
| *Proposed Intervenor Defendant* | |

## HISPANIC LEADERSHIP FUND'S REPLY IN SUPPORT
## OF ITS MOTION TO INTERVENE AS A DEFENDANT

Proposed Intervenor Hispanic Leadership Fund ("HLF") submits this Reply Memorandum in support of its Motion to Intervene as a Defendant in this action. Defendant Federal Election Commission does not oppose HLF's motion to intervene, nor does it suggest that it can represent the interests of HLF in this action. Plaintiff Van Hollen opposes HLF's motion on the misconstrued basis that HLF does not have a legally protectable right in this action and that the FEC can adequately represent its interests. Plaintiff suggests no facts to support either conclusion and misconstrue HLF's motion as is shown below.

I.   **HLF has a cognizable interest which may be impaired by this action and the FEC does not adequately represent HLF's interests.**

Plaintiff Van Hollen's opposition to HLF's Motion initially restates the position of HLF into a false argument that HLF's only interest is to engage in debate as to the constitutionality of statutes and regulations at issue in this case.  After distorting HLF's motion, Plaintiff then concludes that seeking to protect constitutionally recognized free speech rights is not a viable interest worthy of intervention and that free speech rights of the HLF and other entities similar to it are not at issue in this case.

Contrary to Plaintiff's contention, HLF's cognizable interest in this case is not just the making of First Amendment constitutional arguments.  Rather, HLF's reference to the First Amendment in its motion is that absent intervention, its constitutionally protected speech rights would be impaired by uncertainty and the inability of HLF to fundraise or plan for both issue advocacy and other non-FEC regulated speech in which it routinely engages.   The First Amendment implication HLF suggests in its Motion is that impairment of HLF's interest in this action is especially keen because such impairment will chill HLF's First Amendment free speech rights, not as Plaintiff suggests that HLF intends to, "transmorgify the case by luring the Court unnecessarily and improperly into consideration of supposed constitutional questions about BCRA § 201," Plaintiff's Opposition at 3.[1]

---

[1] Plaintiff's suggestion that litigation, the outcome of which will determine how, when, and with what money federally regulated issue advocacy and electioneering communication will be made, does not implicate the First Amendment is to ignore the entire history of campaign finance litigation.  The root of such debate and litigation is the First Amendment and its application to campaign finance rules. Furthermore the FEC did have the First Amendment and its application before it during promulgation of the revised electioneering communication regulations.  The revised regulations are the result of the Supreme Courts determination in *Wisconsin Right to Life v. Federal. Election Commission*, 551 U.S. 449 (2007) (plurality opinion), that the prior regulations were unconstitutional.  The FEC received comments on the proposed regulations which mention First Amendment issues relating to the revised regulations, and most specifically the FEC noted in the Examples and Justification published with the revised rules that

As a regulated entity, HLF has a particular interest in the regulations that control its activities that is distinct from the interests of a regulator. *See Natural Res. Dec. Council v. Costle*, 561 F.2d 904 (D.C. Cir 1977). Other cases pertaining to campaign finance have found that a member of the regulated community has standing to intervene. *See Republican Nat'l Comm. v. Fed. Election Comm'n*, 698 F. Supp. 2d 150 (D.D.C. 2010); *Democratic Senatorial Campaign Comm. v. Fed. Election Comm'n*, 660 F.2d 773 (D.C. Cir 1980). In determining whether a movant's interests will be impaired, courts look to the "'practical consequences' of denying intervention, even where the possibility of future challenge to the regulation remain[s] available." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (quoting *Costle,* 561 F.2d at 909.). As the Advisory Committee Notes to the 1966 amendments to Rule 24(a) explain, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." The burden for determining adequacy of representation is "minimal"; a movant need only show that representation "may be" inadequate in order to meet this burden. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *See also Fund for Animals*, 322 F.3d at 735. Intervention should be permitted "unless it is clear that the [existing] party will provide adequate representation for the absentee." 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1909 (3d ed. 2007).

HLF has engaged in electioneering communications under the regulations, has raised money and planned their future activities in reliance on the existing regulations at

---

commenters noted "the costs of compliance with reporting obligations would chill speech by small nonprofit organizations. Final Rule and Explanation and Justification on Electioneering Communications, 72 Fed. Reg. 72899, 72900-01 (Dec. 26, 2007).

issue in this case.  Plaintiff's position in this case, should it prevail, would have the practical consequence of forcing HLF to significantly alter its programmatic activities, allocation of resources, and fundraising.  It would throw into question HLF's ability to use the general-support funds that it has already raised for its activities and directly affect HLF's ability to engage in constitutionally protected activities.  The FEC cannot, and should not try, to represent HLF's particular narrower interests as a regulated entity.  *See Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 856 (D.C. Cir. 2002) (United Mine Workers of America allowed to intervene on behalf of Dept. Labor in case with APA claims); *Dimond v. District of Columbia*, 792 F.2d 179, 192-193 (D.C. Cir. 1986) (noting the "large class of cases in [the D.C.] Circuit recognizing the inadequacy of governmental representation of the interests of private parties" where the government entity is charged with representing the public interest and the intervenor has a narrower financial interest.); *Natural Res. Dec. Council v. EPA*, 99 F.R.D. 607, 610 (D.D.C. 1983); *Costle*, 561 F.2d at 912- 13, *Nuesse v. Camp*, 385 F.2d. 694, 703-704 (D.D.C. 1967) (recognizing the unique interests of a state regulator and regulated bank in approving a motion to intervene by state banking regulator.); *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 719 F. Supp. 2d 26, 31 (D.D.C. 2010) (Unions permitted to intervene as Defendant in a case where rules promulgated by National Mediation Board were challenged under the APA.)

## II.    Plaintiff presupposes the outcome of this case.

Plaintiff, like the FEC, assumes and argues the result in this case will not be a final order appealable by private party intervernors.  The question of finality would be decided by the Court of Appeals and such analysis is given a "practicable rather than technical consideration."  *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148 (1964) (quoting

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)).   A remand order may be final where (1) the district court conclusively resolves a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable. *Collord v. U.S. Dep't of the Interior*, 154 F.3d 933, 935 (9th Cir. 1998).   Where finality is a close question, courts consider the "inconvenience and costs of piecemeal review" as well as the danger of denying justice by delay.  *Everett v. US Airways Group*, 132 F.3d 770, 774 (D.C. Cir 1998) (quoting *Gillespie,* 379 U.S. at 152-53).  Given the First Amendment implications in this case and the resulting ambiguity in exercising free speech rights, if Plaintiff is successful just as the 2012 election cycle begins in earnest, there is a serious likelihood of denying justice by delay absent appeal.

## III.    CONCLUSION

For the foregoing reasons, and for the reasons stated in HLF's Memorandum in Support of its Motion to Intervene, this Court should grant HLF intervention of right under Rule 24(a)(2) or, in the alternative, permissive intervention under Rule 24(b).


Dated: July 12, 2011                                  Respectfully submitted,

**Holtzman Vogel PLLC**

By:  ____/s/  Jason Torchinsky_____

Jason Torchinsky (Bar No. 976033)
jtorchinsky@holtzmanlaw.net
Scott S. Ward (Bar No. 477030)
sward@holtzmanlaw.net
Karen Blackistone
kblackistone@holtzmanlaw.net

HOLTZMAN VOGEL PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
Tel: (540) 341-8808
Fax: (540) 341-8809

*Counsel for Hispanic Leadership Fund*