# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHRIS VAN HOLLEN,

                    Plaintiff,

        v.

FEDERAL ELECTION COMMISSION,

                  Defendant.

Civil Action No. 1:11-cv-00766 (ABJ)

## REPLY TO INTERVENORS' OPPOSITION TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## AND

## OPPOSITION TO INTERVENOR CENTER FOR INDIVIDUAL FREEDOM'S
## CROSS-MOTION FOR SUMMARY JUDGMENT

## AND

## OPPOSITION TO INTERVENOR HISPANIC LEGAL FUND'S
## CROSS-MOTION TO DISMISS

**TABLE OF CONTENTS**

ARGUMENT ...........................................................................................................1

I.      INTERVENOR HLF'S STANDING ARGUMENT LACKS MERIT .................................1

      A.     Plaintiff Has Informational Standing ......................................................1

      B.     Plaintiff Also Has Competitor Standing ..................................................4

II.     THE INTERVENORS' ARGUMENT THAT THE FIRST AMENDMENT REQUIRED THE
       FEC TO PROMULGATE A REGULATION THAT VITIATES BCRA'S DISCLOSURE
       MANDATE LACKS MERIT ..................................................................................5

      A.     The Constitutionality Of BCRA's Reporting Provisions Is Not In Doubt ..............5

      B.     The Intervenors May Not In Any Event Defend The Challenged
            Regulation On Grounds Not Invoked By The FEC ..................................7

      C.     The FEC May Not In Any Event Promulgate A Regulation That Is
            Inconsistent With BCRA In Order To Cure Supposed Constitutional
            Concerns ..................................................................................................9

III.    INTERVENORS' *CHEVRON* ARGUMENTS LACK MERIT.......................................10

      A.     The Term "Contribute" Does Not Include A Purpose Element............................10

      B.     Congress Understood And Intended That BCRA's Reporting Provisions
            Would Apply To Corporations That Make Electioneering
            Communications ...................................................................................11

CONCLUSION....................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*American Library Association v. FCC*,
   406 F.3d 689 (D.C. Cir. 2005) ...........................................................................9

*Arizona Christian School Tuition Organization v. Winn*,
   131 S. Ct. 1436 (2011) ......................................................................................3

*Association of Civilian Technicians v. Federal Labor Relations Authority*,
   269 F.3d 1112 (D.C. Cir. 2001) .........................................................................7

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ..............................................................................................5

*Center for Individual Freedom, Inc. v. Tennant*,
   No. 1:08-cv-00190, 2011 WL 2912735 (S.D.W.Va. July 18, 2011) ..................6

*Citizens for Responsibility & Ethics in Washington v. FEC*,
   -- F. Supp. 2d --, No. 10–1350, 2011 WL 3268079 (D.D.C. Aug. 1, 2011)..............2

*Citizens United v. FEC*,
   130 S. Ct. 876 (2010) ............................................................................4, 5, 6, 11

*Common Cause v. FEC*,
   906 F.2d 705 (D.C. Cir. 1990) ..........................................................................7

*FEC v. Akins*,
   524 U.S. 11 (1998)......................................................................................2, 3, 5

*FEC v. Massachusetts Citizens for Life*,
   479 U.S. 238 (1986)..........................................................................................11

*Kean for Congress Committee v. FEC*,
   398 F. Supp. 2d 26 (D.D.C. 2005) .....................................................................3

*McConnell v. FEC*,
   540 U.S. 93 (2003)................................................................................. 4, 6, 11-12

*Public Citizen v. United States Department of Justice*,
   491 U.S. 440 (1989)...........................................................................................3

*SEC v. Chenery Corp.*,
   332 U.S. 194 (1947).............................................................................................7

*Shays v. FEC ("Shays I"),
    414 F.3d 76 (D.C. Cir. 2005) ......................................................................4, 5, 9

*Shays v. FEC ("Shays III"),
    528 F.3d 914 (D.C. Cir. 2008) ................................................................1, 2, 3, 5

Syracuse Peace Council v. FCC,
    867 F.2d 654 (D.C. Cir. 1989) ...........................................................................8, 9

Weinberger v. Salfi,
    422 U.S. 749 (1975) ................................................................................................9

## STATUTES, CODES & REGULATIONS

*2 U.S.C. § 431(8)(A) ..........................................................................................10

*2 U.S.C. § 434(f) ..........................................................................................5, 6, 11

*2 U.S.C. § 434(f)(2) ...............................................................................................5

*2 U.S.C. § 434(f)(2)(F) .....................................................................................8, 10

2 U.S.C. § 437d ........................................................................................................9

2 U.S.C. § 437g(a)(8) ..............................................................................................2

11 C.F.R. § 104.20(c)(9) ..........................................................................................8

*Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107-155, 116 Stat. 81 (2002).........5, 8, 9

*Federal Election Campaign Act of 1971, 92-225, 86 Stat. 3 (1972) ...........................................10

*Final Rule, 72 Fed. Reg. 72899 (Dec. 26, 2007) ...............................................7, 8, 9

*Notice of Proposed Rule-Making, 72 Fed. Reg. 50261 (Aug. 31, 2007) ................................7, 9

## OTHER AUTHORITIES

147 Cong. Rec. S2845 (Mar. 26, 2001) ...............................................................12

Merriam-Webster's Collegiate Dictionary (10th ed. 2001).....................................10-11

Webster's Third New Int'l Dictionary (2002) ..........................................................10

Plaintiff Chris Van Hollen respectfully submits this reply and opposition to submissions filed by the Hispanic Legal Fund ("HLF") and the Center for Individual Freedom ("CFIF") (collectively, "Intervenors").

## ARGUMENT

### I.   INTERVENOR HLF'S STANDING ARGUMENT LACKS MERIT

HLF's submission, styled as a motion to dismiss, asserts that Plaintiff lacks standing [dkt. no. 30]. HLF's arguments are foreclosed by applicable precedent.

### A.   Plaintiff Has Informational Standing

The challenged regulation injures Plaintiff because it deprives him of information to which he is entitled under BCRA as a voter, leader and member of a political party, and candidate—the names of "all contributors" whose money corporations and labor organizations use to fund "electioneering communications" made both in his own district and nationwide. *See* Complaint ¶ 11; Declaration of Representative Chris Van Hollen in Support of Motion for Summary Judgment [dkt. no. 20-1] ("Van Hollen Decl.") ¶¶ 3-5; Plaintiff's Motion for Summary Judgment [dkt. no. 20] ("Pl's Br."), at 16-17. His injury is traceable to the FEC because the FEC promulgated the challenged rule misinterpreting BCRA, and Plaintiff's injury would be redressed, if this Court invalidates that rule.

In these circumstances, D.C. Circuit precedent makes clear that Plaintiff has informational standing. *See Shays v. FEC*, 528 F.3d 914, 923 (D.C. Cir. 2008) ("*Shays III*") (holding that Member of Congress had informational standing to challenge certain FEC regulations under the Administrative Procedure Act). In *Shays III*, the plaintiff there—a Member of Congress like Plaintiff here—alleged that the FEC's definition of "coordinated communications" permitted presidential candidates to avoid BCRA's reporting obligations, illegally denying him information "about who is funding presidential candidates' campaigns."

- 1 -

*Id.*  Based on this allegation, the D.C. Circuit held that plaintiff "Shays plainly [had] standing[.]" *Id.* (citing *FEC v. Akins*, 524 U.S. 11 (1998) (holding that plaintiffs had standing to challenge the FEC's determination that an entity was not a "political committee" and therefore not required to make disclosures that the Federal Election Campaign Act would otherwise require)).

Here, as in *Shays III*, information about who is funding "electioneering communications" about presidential and other candidates for federal office would help Plaintiff and others to whom he would communicate such information "to evaluate candidates for public office" and "to evaluate the role that outside groups' financial assistance might play in a specific election." *Shays III*, 528 F.3d at 923 (internal quotation marks and brackets omitted).  Thus, as in *Shays III*, Plaintiff "plainly" has standing.  *See id.*

HLF contends that the Supreme Court's decision in *Akins*, which the *Shays III* court cited, should be limited to challenges brought pursuant to 2 U.S.C. § 437g(a)(8) (providing that a party "aggrieved" by specified FEC order may seek judicial review).  *See* HLF Br. 2-3.  *Akins* neither says nor implies any such thing.  Moreover, *Shays III* forecloses this argument.  Plaintiff in *Shays III*—like Plaintiff Van Hollen—brought a civil action under the Administrative Procedure Act ("APA"), not a petition for review under 2 U.S.C. § 437g(a)(8).  The D.C. Circuit held that *Akins*'s holding was applicable to the APA action:  "We see no difference between [Plaintiff's] injury and the injury deemed sufficient to create standing in *Akins*."  *Shays III*, 528 F.3d at 923.  HLF's reliance on *Citizens for Responsibility & Ethics in Washington v. FEC*, -- F. Supp. 2d --, No. 10–1350, 2011 WL 3268079 (D.D.C. Aug. 1, 2011), is misplaced:  that decision adjudicated a challenge pursuant to 2 U.S.C. § 437g(a)(8), and said nothing about whether *Akins* should be limited to such challenges.

HLF's reliance on a taxpayer standing case, *Arizona Christian School Tuition Org. v. Winn*, 131 S. Ct. 1436 (2011)), *see* HLF Br. 4, is also misplaced.  The Supreme Court in *Akins* specifically distinguished "taxpayer standing" cases from informational standing cases.  *See Akins*, 524 U.S. at 21-23.  As the Supreme Court held, even though the FEC's regulation causes others voters, party members, and candidates to suffer the same injury, this fact does not diminish the concrete injury to Plaintiff Van Hollen because "the informational injury at issue here, directly related to voting, the most basic of political rights, is sufficiently concrete and specific such that the fact that it is widely shared does not deprive Congress of constitutional power to authorize its vindication in the federal courts."  *Id.* at 24-25; *see also Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 449-50 (1989) (holding that the "fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure under [the Federal Advisory Committee Act] does not lessen appellants' asserted injury[.]").

Finally, HLF argues "Plaintiff's alleged injury is not concrete" because he does not make "electioneering communications" and has not yet been identified in a reported "electioneering communication."  *See* HLF Br. 5.  This argument confuses informational standing with competitor standing (discussed *infra*).  A voter or candidate need not make "electioneering communications" or be the subject of "electioneering communications" to claim informational standing.  *See Akins*, 524 U.S. at 21 ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute."); *Shays III*, 528 F.3d at 923 (same); *Kean for Congress Comm. v. FEC*, 398 F. Supp. 2d 26, 36 (D.D.C. 2005) ("The Court in *Akins* did not require the plaintiffs to establish a statutory right to information and then further establish an additional concrete and immediate harm.").

### B.       Plaintiff Also Has Competitor Standing

The challenged regulation also injures Plaintiff because it infringes his protected interest

in participating in elections untainted by activities that disregard BCRA's statutory disclosure

requirements.  Because the challenged regulation permits and encourages corporations and

unions not to disclose "all contributors" who fund "electioneering communications," Plaintiff

cannot—as a voter, party leader, and candidate—draw the voters' attention to the identity of

those who may attack him or others.  *See* Complaint ¶ 11; Van Hollen Decl. ¶ 4; Pl's Br. 17;

*Citizens United v. FEC*, 130 S. Ct. 876, 914 (2010) (recognizing that voters are in a better

position to assess electioneering communications when the speaker does not "'hid[e] behind

dubious and misleading names.'" (quoting *McConnell v. FEC*, 540 U.S. 93, 197 (2003)).  This

injury, too, is traceable to the FEC's regulation and would be redressed by invalidation of the

regulation.

In these circumstances, Plaintiff has competitor standing under *Shays v. FEC*, 414 F.3d

76 (D.C. Cir. 2005) ("*Shays I*").  In that case, the D.C. Circuit held that federal candidates "suffer

injury to a statutorily protected interest if under FEC rules they must compete for office in

contests tainted by BCRA-banned practices."  *Id.* at 85; *see id.* at 83-96.  The Court held that a

candidate for federal election need not show that he has already been injured by the BCRA-

banned practice or that "specific rivals have exploited each challenged rule."  *Id.* at 90.

Candidates "may challenge FEC subversion of BCRA's guarantees without establishing with any

certainty … that the challenged rules will disadvantage their reelection campaigns."  *Id.* at 91

(internal quotation marks, citation, and brackets omitted).  They may satisfy the constitutional

requirements for standing by showing that they may be affected by a banned practice because, in

the context of election law, "regulated parties will seize opportunities created by the challenged

rules." *Id.* at 90.  Plaintiff has made that showing.  *Compare id.* at 84 (quoting declarations of Reps. Shays and Meehan), *with* Van Hollen Decl. ¶ 4.

HLF argues that *Shays I* is not controlling here because the challenged regulation does not violate BCRA.  *See* HLF Br. 6 ("[I]t cannot be claimed that the [challenged regulation] causes elections to be 'tainted' by a 'BCRA-banned practice.'"); *see also id.* at 7-8 (same).  That quite circular argument conflates standing with the merits and cannot be squared with the reasoning or the outcomes in *Akins*, *Shays I*, or *Shays III*.  HLF also seeks to distinguish *Shays I* on the ground that certain BCRA-banned practices have since been afforded constitutional protection.  *See* HLF Br. 7-8.  But Plaintiff does not here contend that he has a statutory right to compete in elections untainted by corporate expenditures of the type sanctioned in *Citizens United*, and even if he did, HLF would still confuse jurisdiction with the merits.

## II.   THE INTERVENORS' ARGUMENT THAT THE FIRST AMENDMENT REQUIRED THE FEC TO PROMULGATE A REGULATION THAT VITIATES BCRA'S DISCLOSURE MANDATE LACKS MERIT

### A.     The Constitutionality Of BCRA's Reporting Provisions Is Not In Doubt

The Supreme Court's decision in *Citizens United* provides the full answer to the constitutional questions that Intervenors raise.  *See Citizens United*, 130 S. Ct. at 914-16 (upholding 2 U.S.C. § 434(f) against constitutional challenge by a vote of 8-1).  In that case, the Court considered and rejected an as-applied challenge by a corporation to 2 U.S.C. § 434(f), the statute at issue here.  In describing this provision of BCRA, the Court specifically referred to § 434(f)(2) as requiring disclosure of contributors to corporations that make "electioneering communications."  130 S. Ct. at 914.  The Court commented that, since *Buckley v. Valeo*, 424 U.S. 1 (1976), it had sustained such disclosure provisions "based on the governmental interest in 'provid[ing] the electorate with information' about the sources of election-related spending." *Citizens United*, 130 S. Ct. at 914 (brackets in *Citizens United*).  The Court further recounted that

in *McConnell* it had rejected facial challenges to § 434(f), based on evidence that "independent groups were running election-related advertisements 'while hiding behind dubious and misleading names.'" *Id.* (quoting *McConnell*, 540 U.S. at 197).  The Court noted that it had upheld § 434(f) in *McConnell* on the ground that it would help citizens "'make informed choices in the political marketplace.'" *Id.* (quoting *McConnell*, 540 U.S. at 197).  And the Court specifically rejected the general contention "that disclosure requirements can chill donations to an organization by exposing donors to retaliation." *Id.* at 916.

In concluding that petitioner Citizens United—a non-profit corporation—was obliged to disclose its contributors in accordance with BCRA, the Court made explicit that its approval of § 434(f)'s disclosure requirements also applied to for-profit corporations.  *See Citizens United*, 130 S. Ct. at 916.  The Court stressed the importance of BCRA's disclosure requirements for corporations and their *shareholders*, a term relevant only with respect to for-profit corporations:

> [P]rompt disclosure of expenditures can provide *shareholders* and citizens with the information needed to hold corporations and elected officials accountable for their positions and supporters.  *Shareholders* can determine whether their corporation's political speech advances the *corporation's interest in making profits*, and citizens can see whether elected officials are in the pocket of so-called moneyed interests.  The First Amendment protects political speech; and disclosure permits citizens and *shareholders* to react to the speech of corporate entities in a proper way.  This transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages.

*Id.* (internal quotation marks and citations omitted, emphasis added).

In light of *Citizens United*, Intervenors' citation to a poorly reasoned decision by a district court in West Virginia, *Center for Individual Freedom, Inc. v. Tennant*, No. 1:08-cv-00190, 2011 WL 2912735 (S.D.W.Va. July 18, 2011) (notice of appeal filed Sept. 1, 2011), *see* HLF Br. 11-13; CFIF Br. 17-18, is unavailing.  The decision is contrary to *Citizens United*, and the district court made no attempt to square its ruling with *Citizens United*.

**B.      The Intervenors May Not In Any Event Defend The Challenged Regulation On Grounds Not Invoked By The FEC**

A "fundamental rule of administrative law" is that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *see Common Cause v. FEC*, 906 F.2d 705, 707 (D.C. Cir. 1990) (reversing on *Chenery* grounds because the district court "drew inferences for which there [was] inadequate support in the reasoning of the [Commission's decision]" and "suppl[ied] reasons that the agency never adopted as its own."). Even if Intervenors' constitutional arguments had any merit, this Court could not sustain the challenged regulation based on constitutional concerns that the FEC did not itself invoke as a decisional ground.

Intervenors have asserted, incorrectly, that the FEC relied on the First Amendment in promulgating the challenged regulation. *See* HLF Intervention Reply [dkt. no. 23], at 2 n.1; CFIF Intervention Reply [dkt. no. 22], at 4-5. They argued that the FEC sought and received comments about "'First Amendment … concerns'" and considered those comments. CFIF Intervention Reply 4 (quoting Notice of Proposed Rule-Making, 72 Fed. Reg. 50261, 50262 (Aug. 31, 2007), ellipsis in CFIF Br.). And CFIF concluded that "the FEC settled on 'reporting requirements' that it believed were 'narrowly tailored' in a 'constitutional way' to 'not create unreasonable burdens on the privacy rights of donors.'" *Id.* (quoting Final Rule, 72 Fed. Reg. 72899, 72901(Dec. 26, 2007)).

In determining whether an agency relied on a particular decisional ground, a court must examine what the agency actually said in explaining and justifying the regulation in question. *See, e.g.*, *Association of Civilian Technicians v. Federal Labor Relations Auth.*, 269 F.3d 1112, 1117 (D.C. Cir. 2001) ("Agency decisions must generally be affirmed on the grounds stated in

them.").  Here, the Intervenors cannot and do not point to any passage in the FEC's Explanation

and Justification ("E & J") where the FEC, in explaining and justifying its decision, actually

invoked the First Amendment as a ground for its interpretation of BCRA § 201, 2 U.S.C.

§ 434(f)(2)(F).  The absence of any such text is particularly striking because it would have been

easy enough for the FEC to invoke the First Amendment.  *See, e.g.*, *Syracuse Peace Council v.*

*FCC*, 867 F.2d 654, 658 (D.C. Cir. 1989) (noting that agency had reasoned that "'the fairness

doctrine contravenes the First Amendment and *thereby* disserves the public interest'" (quoting

agency rationale in record, emphasis in *Syracuse Peace Council*)); *id.* at 673 (Starr, J.,

concurring) ("[T]he issue comes to us in an administrative law setting with the agency expressly

relying upon constitutional considerations and rendering a constitutional judgment.").

Far from invoking First Amendment considerations applicable to "contributors" as the

Intervenors suggest, the FEC's stated rationale for promulgating the challenged regulation was

the purported cost and effort—to the *recipient*, not to the contributor—associated with

identifying persons who contributed more than $1,000 to a corporation or labor organization.

*See* 72 Fed. Reg. 72910-11.  It could not be clearer that the FEC was not invoking as a decisional

ground the asserted First Amendment right of contributors to fund "electioneering

communications" anonymously.  *See id.*

The Intervenors' references to fragments of the administrative record do not establish that

the FEC relied on the First Amendment as a ground for promulgating 11 C.F.R. § 104.20(c)(9).

That an agency may have sought, received, and considered comments on a topic does not equate

with a conclusion that the topic became a decisional ground on which an agency relied.  This is

particularly the case where, as here, the FEC noted that the "commenters were divided," 72 Fed.

Reg. 72900, recounted the conflict among them, and ultimately decided to enact a "revised"

regulation whose text had not been the subject of comment, *see id.* at 72900-01 (E & J); Notice

of Proposed Rule-Making, 72 Fed. Reg. 50261, 50273 (Aug. 31, 2007) (proposed text of

amendments to 11 C.F.R. § 104.20 under Alternative 1).

> **C.      The FEC May Not In Any Event Promulgate A Regulation That Is
> Inconsistent With BCRA In Order To Cure Supposed Constitutional
> Concerns**

The Intervenors maintain that the "FEC's construction is necessary to save the statute

from constitutional invalidity." CFIF Br. 13 (subheading, title case modified); *see also* HLF Br.

12.  But the FEC has no authority to "save" statutes by promulgating regulations that vitiate

them.  *See Weinberger v. Salfi*, 422 U.S. 749, 794 (1975) ("Adjudication of the constitutionality

of congressional enactments has generally been thought beyond the jurisdiction of administrative

agencies." (internal quotation marks and citation omitted)); *Syracuse Peace Council*, 867 F.2d at

656 (noting "the principle that regulatory agencies cannot invalidate an act of Congress").  The

Commission "has no constitutional or common law existence or authority, but only those

authorities conferred upon it by Congress."  *American Library Ass'n v. FCC*, 406 F.3d 689, 698

(D.C. Cir. 2005) (internal quotation marks and citation omitted).  Congress assuredly did not

delegate authority to the FEC to promulgate regulations contrary to BCRA.  *See* BCRA, Pub. L.

No. 107-155, § 402(c)(1), 116 Stat. 81, 113 (2002); *Shays I*, 414 F.3d at 101-02

("Notwithstanding its obligation to attempt to avoid unnecessarily infringing on First

Amendment interests, … the Commission must establish, consistent with APA standards, that its

rule [carries out the statute]." (internal quotation marks and citation omitted)); *see also* 2 U.S.C.

§ 437d (powers of commission).

### III.    INTERVENORS' *CHEVRON* ARGUMENTS LACK MERIT

### A.    The Term "Contribute" Does Not Include A Purpose Element

Making a *Chevron* Step One argument that the FEC rejected, CFIF argues that the terms

"contributor" and "contributed" as used in BCRA § 201, 2 U.S.C. § 434(f)(2)(F), should have the

same meaning as the term "contribution," as defined in the Federal Election Campaign Act of

1971, Pub. L. No. 92-225 ("FECA") § 301, 2 U.S.C. § 431(8)(A).  But as both Plaintiff and the

FEC have explained, "contributor" as used in BCRA cannot logically mean one who makes a

"contribution" as FECA defines the latter term because the FECA definition is inconsistent with

the more specific BCRA provision.  *See* Pl's Br. 20-21; FEC Br. 20; *see also* Plaintiff's Reply to

the FEC [dkt. no. 35], at 9.  CFIF does not address this argument.  *See* CFIF Br. 7-8.

CFIF also contends that Webster's definition of "contribute" "turns on purpose" because

it parenthetically indicates that a contributor may "'give or grant in common with others (as to a

common fund <u>or</u> for a common purpose)'" or "'give (money or other aid) for a specified

object,'" CFIF Br. 8 (quoting Webster's Third New Int'l Dictionary 496 (2002) (emphasis

modified)), *e.g.*, "<$10 to the project>," Webster's at 496.  But this definition does not, upon

examination, "turn on purpose" because its reference to "purpose" is in the disjunctive and

because the definition does not limit "contributors" to persons who have announced or otherwise

made their purpose manifest.  The statute makes clear that the term "contribute" means one who

gives or grants in common with others to a common fund or account, 2 U.S.C. § 434(f)(2)(E)

("all contributors who contributed an aggregate amount of $1,000 or more to that account"), or

common person, *id.* § 434(f)(2)(F) ("all contributors who contributed an aggregate amount of

$1,000 or more to the person making the disbursement").  *See also* Merriam-Webster's

Collegiate Dictionary 252 (10th ed. 2001) (defining transitive verb "contribute" as "to give or

supply in common with others" and intransitive verb as "to give a part to a common fund or store").

CFIF also contends that Plaintiff has proposed a "purpose" test of his own by contending that the term "contributor" does not encompass investors, customers, lenders, and others who make payments in exchange for property or services.  *See* CFIF Br. 9 (citing Pl's Br. 30-31). CFIF misstates Plaintiff's argument.  Customers, for example, are not "contributors" within the meaning of 2 U.S.C. § 434(f) because they do not "give" or "grant" *gratuitously* to a fund or person.  No inquiry into a customer's "purpose" is necessary to determine that she is not a "contributor"; a person is a customer because the nature of the transaction in which she engages is not one of gift but of an exchange of money for property or services.  Likewise, a person is a "contributor" if she does not receive fair market value in return for her donation, whether or not the contributor harbors any particular "specific intent" with respect the donation.  *See* Pl's Br. 20.

**B.     Congress Understood And Intended That BCRA's Reporting Provisions Would Apply To Corporations That Make Electioneering Communications**

HLF argues that the "Wellstone Amendment" can be read to bar all corporate "electioneering communications" and therefore Congress did not intend for 2 U.S.C. § 434(f) to apply to corporations.  *See* HLF Br. 8-10.  First, if that were the case, then the Supreme Court's discussion in *Citizens United* of the applicability of § 434(f)'s contributor disclosure provisions to for-profit and non-profit corporations would have been utterly nonsensical.  Second, as HLF acknowledges, the Supreme Court construed BCRA as permitting *MCFL* corporations[1] to make "electioneering communications."  *See* HLF Br. 9; *McConnell*, 540 U.S. at 211 ("Because our decision in the *MCFL* case was on the books for many years before BCRA was enacted, we

---

[1]      "*MCFL* corporations" are corporations that meet criteria set out in *FEC v. Massachusetts Citizens for Life*, 479 U.S. 238 (1986).  *See* Pl's Br. 5, 24-25.

presume that the legislators who drafted [the Wellstone Amendment] were fully aware that the provision could not validly apply to *MCFL*-type entities.").  The statement of Senator Wellstone quoted in HLF's brief shows that Senator Wellstone argued that his amendment would survive scrutiny under *MCFL*.  *See* HLF Br. 9-10 (quoting 147 Cong. Rec. S2845, S2848 (Mar. 26, 2001) (Statement of Sen. Wellstone)).  But even if Senator Wellstone had hoped to bar all corporate "electioneering communications," the hopes of a single Senator are not determinative. As the Supreme Court and the FEC both determined, *Congress* intended to permit such communications by *MCFL* corporations.

## CONCLUSION

For the reasons stated, we respectfully urge the Court to grant Plaintiff's motion for summary judgment and deny CFIF's and HLF's cross motions.

Dated this 15th day of September, 2011.

Respectfully submitted,

/s/ Roger M. Witten

| | |
|---|---|
| Fred Wertheimer (Bar No. 154211) | Roger M. Witten (Bar No. 163261) |
| DEMOCRACY 21 | Brian A. Sutherland |
| 2000 Massachusetts Ave, N.W. | Fiona J. Kaye |
| Washington, D.C. 20036 | WILMER CUTLER PICKERING |
| (202) 355-9610 |    HALE AND DORR LLP |
| | 399 Park Avenue |
| | New York, NY 10022 |
| | (212) 230-8800 |
| | |
| Donald J. Simon (Bar No. 256388) | Trevor Potter (Bar No. 413778) |
| SONOSKY CHAMBERS SACHSE | J. Gerald Hebert (Bar No. 447676) |
|    ENDRESON & PERRY, LLP | Paul S. Ryan (Bar No. 502514) |
| 1425 K Street, N.W. | Tara Malloy (Bar No. 988280) |
| Suite 600 | CAMPAIGN LEGAL CENTER |
| Washington, D.C. 20005 | 215 E Street N.E. |
| (202) 682-0240 | Washington, D.C. 20002 |
| | (202) 736-2200 |
| | |
| | *Attorneys for Plaintiff Chris Van Hollen* |