**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRIS VAN HOLLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FEDERAL ELECTION COMMISSION, ) | Civil Action No. 1:11-cv-00766 (ABJ) |
| ) | |
| Defendant, ) | |
| ) | |
| HISPANIC LEADERSHIP FUND, ) | |
| ) | |
| Intervenor Defendant, ) | |
| ) | |
| CENTER FOR INDIVIDUAL FREEDOM, ) | |
| ) | |
| Intervenor Defendant. ) | |

**REPLY TO PLAINTIFF VAN HOLLEN'S
REPLY TO INTERVENORS' OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO INTERVENOR HISPANIC
<u>LEADERSHIP FUND'S CROSS-MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..............................................................................................ii

ARGUMENT

    I.    PLAINTIFF'S STANDING ARGUMENTS ARE FLAWED. ......................................1

        A. Plaintiff's Assertion of Informational Standing Rests Upon A Claim of Injury That Would Not Be Redressed By The Relief Sought. ............................................1

        B. Plaintiff's Assertion of Competitor Standing Rests Upon A Claim of Injury That Would Not Be Redressed By The Relief Sought. ...................................................2

    II.    PLAINTIFF MISCHARACTERIZES *CITIZENS UNITED* v. *FEC*. ..............................3

        A. *Citizens United* Does Not Address The Meaning of BCRA's Electioneering Communication Disclosure Provision. ...................................................................3

        B. *Center For Individual Freedom v. Tenant* Directly Addresses The Matter Before The Court And The Constitutional Issues Presented. ..............................................4

    III.    PLAINTIFF'S ASSERTION THAT THE FEC DID NOT RELY ON FIRST AMENDMENT CONSIDERATIONS IS INCORRECT. ............................................6

    IV.    STATEMENTS OF SENATOR WELLSTONE REGARDING THE MEANING OF THE WELLSTONE AMENDMENT ARE ENTITLED TO DEFERENCE. .............10

    V.    Conclusion. ..................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Center for Individual Freedom, Inc*. v. *Tennant*, 2011 U.S. Dist. LEXIS 78514,
　　No. 1:08-cv-00190 (S.D.W.Va. July 18, 2011) ........................................................4, 5, 6

*Citizens United* v. *FEC*, 130 S. Ct. 876 (2010) ...................................................................*passim*

*McConnell* v. *FEC*, 540 U.S. 93 (2003) ...................................................................................4

*Shays* v. *FEC*, 528 F.3d 914 (D.C. Cir. 2008) .........................................................................2

*Wisconsin Right to Life, Inc*. v. FEC, 551 U.S. 449 (2007) ..................................................5, 7

## STATUTES, CODES AND REGULATIONS

2 U.S.C. § 434(f)(2)(F) ........................................................................................................1, 3, 4

11 C.F.R. § 104.20(c)(9) ............................................................................................................3, 5

Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107-155,
　　116 Stat. 81 (2002) ..........................................................................................*passim*

Federal Election Campaign Act of 1971, Pub. L. No. 92-225,
　　86 Stat. 3 (1972) ..........................................................................................................4

## OTHER AUTHORITIES

William N. Eskridge, Jr. and Philip P. Frickey, *Legislation: Statutes and the Creation of Public Policy* 791 (2d ed. 1995) ........................................................................................................10

I.	**PLAINTIFF'S STANDING ARGUMENTS ARE FLAWED**

    A.	**Plaintiff's Assertion of Informational Standing Rests Upon A Claim of Injury That Would Not Be Redressed By The Relief Sought**

Plaintiff claims informational standing on the grounds that "[t]he challenged regulation injures Plaintiff because it deprives him of information to which he is entitled under BCRA as a voter, leader and member of a political party, and candidate – the names of 'all contributors' whose money corporations and labor organizations use to fund 'electioneering communications' made both in his own district and nationwide." *See* Plaintiff's Reply To Intervenors' Opposition To Plaintiff's Motion For Summary Judgment at 1 ("Pl. Reply To Intervenors").

If this Court grants the relief requested by Plaintiff, on the grounds advanced by Plaintiff, the FEC would be forced to adopt a new regulation that would still not provide Plaintiff with the information that would enable him to "draw attention to the person or persons who finance 'electioneering communications' about me and thereby put such 'electioneering communications' in their proper context for voters to consider." Pl. Reply To Intervenors at 1; Decl. of Rep. Van Hollen In Support of Mot. Summ. J. at ¶ 4. Rather, Plaintiff's requested relief would ultimately yield a revised regulation requiring the disclosure of a portion of the organization's membership/supporter list, namely, a listing of "all contributors who contributed an aggregate amount of $1,000 or more" to the organization during a specified time period. 2 U.S.C. § 434(f)(2)(F). Plaintiff would obtain no information detailing the specific person or entities that financed any particular electioneering communication for the simple reason that the statute, as read by Plaintiff, does not require this type of disclosure. The relief that Plaintiff ultimately seeks – the ability to draw attention to and respond to the funders of specific electioneering communications – is simply not available under the statute, and therefore, Plaintiff's claimed injury cannot be redressed by this Court.

Plaintiff's reliance on *Shays* v. *FEC*, 528 F.3d 914 (D.C. Cir. 2008) ("*Shays III*") is also misplaced. In that case, Representative Shays argued that the FEC's coordination regulation allowed too much activity to escape coverage, the result of which was to allow "coordinated" spending to occur (in some cases funded with nonfederal funds, *i.e.*, "soft money") without that spending being classified, and reported, as an in-kind contribution to a candidate. As the *Shays III* Court explained:

> [U]nder the FEC's definition of coordinated communications, presidential candidates need not report as contributions many expenditures that Shays believes BCRA requires them to report. Thus, Shays claims the regulation illegally denies him information about who is funding presidential candidates' campaigns.

*Shays III*, 528 F.3d at 923. The relief requested by Shays (an order leading to a more restrictive coordination regulation) would yield to Shays' specific information regarding the funding source(s) of specific coordinated communications benefiting a candidate, thereby producing information about the financing of the candidate's committee and campaign. This relief would directly satisfy Shays' purported informational interest in information pertaining to who is funding specific election activity. Here, the relief Plaintiff seeks would ultimately yield only a list of persons who may or may not have contributed funds that were subsequently used by others to finance an advertisement that was neither sponsored nor authorized by any candidate.

### B. Plaintiff's Assertion of Competitor Standing Rests Upon A Claim of Injury That Would Not Be Redressed By The Relief Sought

Plaintiff asserts competitor standing on the grounds that "[b]ecause the challenged regulation permits and encourages corporations and unions not to disclose 'all contributors' who fund 'electioneering communications,' Plaintiff cannot – as a voter, party leader, and candidate – draw the voters' attention to the identify of those who may attack him or others." Pl. Reply To

Intervenors at 4.  For the same reasons set forth above, Plaintiff's requested relief would not redress Plaintiff's claimed injury.

## II. PLAINTIFF MISCHARACTERIZES *CITIZENS UNITED* v. *FEC*

### A. *Citizens United* Does Not Address The Meaning of BCRA's Electioneering Communication Disclosure Provision

Plaintiff incorrectly asserts that "[t]he Supreme Court's decision in *Citizens United* provides the full answer to the constitutional questions that Intervenors raise."  Pl. Reply To Intervenors at 5.  Plaintiff continues to confuse the issue of what disclosure requirements *may be* constitutionally imposed with the entirely separate issue of what disclosure requirements Congress *actually did* impose when it adopted BCRA.

In *Citizens United*, the Supreme Court issued broad language on the subject of disclosure, but it did not consider the issue raised in this litigation – namely, the actual meaning and scope of the electioneering communication donor/contributor disclosure provision at 2 U.S.C. § 434(f)(2)(F).  The Court held that Section 434(f)(2)'s requirement that "the names of certain contributors" be disclosed survived constitutional scrutiny in the case of an organization that "has been disclosing its donors for years and had identified no instance of harassment or retaliation."  *Citizens United* v. *FEC*, 130 S. Ct. 876, 915-916 (2010).  This pronouncement on the general constitutional permissibility of donor disclosure says nothing about the narrow issue of statutory interpretation and regulatory gap-filling that is the subject of this litigation.

Also relevant is the fact that 11 C.F.R. § 104.20(c)(9) pre-dates *Citizens United*.  The FEC's regulatory interpretation of Section 434(f)(2)(F) was well-established when the Court considered and issued its opinion in *Citizens United*.  The Court appears to have contemplated a less expansive application of the provision than is urged here by the Plaintiff: "Even if it disclosed the funding sources *for the ads*, Citizens United says, the information would

3

not help viewers make informed choices in the political marketplace." *Citizens United*, 130 S. Ct. at 915 (emphasis added). There is no suggestion in the *Citizens United* decision that Appellant Citizens United was required to file an electioneering communications report disclosing information regarding all persons who contributed/donated to the organization regardless of whether those funds actually financed the communications at issue.

The Supreme Court did, however, address the donor disclosure provision in *McConnell* v. *FEC*, 540 U.S. 93 (2003). The Court compared the electioneering communication donor disclosure provision with a parallel provision for reporting contributions made to finance independent expenditures. *See McConnell* v. *FEC*, 540 U.S. at 196 n.81. The Court explained that "[t]he disclosure requirements that BCRA § 201 added to FECA § 304 are actually somewhat less intrusive than the comparable requirements that have long applied to persons making independent expenditures," because the threshold for reportable contributions is higher. *Id*. There is no suggestion in this passage that a vastly different standard applies to electioneering communications. Rather, the Supreme Court's sole statement on the meaning of 2 U.S.C. § 434(f)(2)(F) assumes that it follows the independent expenditure model, only with a higher reporting threshold. The FEC's regulation, which applies the "earmarking" standard of independent expenditure disclose to electioneering communications, is justified by the Supreme Court's 2003 language.

**B.     *Center For Individual Freedom* V. *Tennant* Directly Addresses The Matter Before The Court And The Constitutional Issues Presented**

Plaintiff's argument that *Center for Individual Freedom, Inc*. v. *Tennant*, No. 1:08-cv-00190, 2011 U.S. Dist. LEXIS 78514 (S.D.W.Va. July 18, 2011) "is contrary to *Citizens United*" is incorrect. Pl. Reply To Intervenors at 6. *Citizens United* did not address the issue presented in *Center for Individual Freedom, Inc.* To the extent that "the district court made no attempt to square

its ruling with *Citizens United*," as Plaintiff asserts, there was, quite simply, nothing to "square." *Id*. *Center for Individual Freedom, Inc*., is relevant authority on the matter before this Court.

Plaintiff incorrectly asserts that the FEC did not consider the constitutional issues addressed in *Center for Individual Freedom, Inc*. To the contrary, in the rulemaking proceeding that led to 11 C.F.R. § 104.20(c)(9), the FEC considered the same basic constitutional problems identified in *Center for Individual Freedom, Inc*. The FEC held two days of public hearings on how to conform its regulations to the Supreme Court's decision in *Wisconsin Right to Life, Inc v. FEC*, 551 U.S. 449 (2007) ("*WRTL II*"). During these hearings, Commissioner Weintraub asked "why we would want a union that ran an electioneering communication to have to disclose the names of all of its dues-paying members? Are we going to get any useful information?" Commissioner Weintraub, Defendant Federal Election Commission's Certified Administrative Record, Exhibit Attachment #4, Tab 35 VH0658-59 ("Hearing Comments"). The issue of limiting disclosure to "useful information" was the focal point of the district court's decision in *Center for Individual Freedom, Inc*. Chairman Lenhard made a similar observation:

> Does the fact that they run an ad like the one that was run in this particular case then lead to a degree of disclosure that is far beyond the funding of that particular ad[?] This has been a question that organizations have wrestled with for a long time which is, is this money really coming from the donors to the group or have they made general donations to the group and the group makes the decision to run the ads?

Chairman Lenhard, Hearing Comments, FEC's Admin. Record, Tab 35 VH0618-619.

One witness spoke of tailoring the disclosure requirement for the sake of producing "meaningful" disclosure: "From my point of view, the virtue and the policy importance of the donor disclosure is in the context that the court talked about, in terms of having the spender

disclosure meaningful by the public knowing who is behind it and getting around the problem of this kind of 'false front' type of organization" [sic]. Simon, Democracy 21, Hearing Comments, FEC's Admin. Record, Tab 35 VH0659. Another witness explained that if a person makes a $1,000 gift to support an organization generally, "then it is unfair [to the donor] and it is misleading to the public to suggest that that person was connected to the ad in some way, that they paid for the ad." Trister, Alliance For Justice, Hearing Comments, FEC's Admin. Record, Tab 36 VH0840.

These are the very same considerations that led the court in *Center for Individual Freedom, Inc.* to conclude that "[t]he practical effect of requiring such expansive disclosure is not only to compel a flood of information, but a flood of information that is not necessarily relevant to the purpose the regulation purportedly serves: to provide the electorate with information as to who is speaking." *Center for Individual Freedom, Inc.*, 2011 U.S. Dist. LEXIS 78514, *167.

### III. PLAINTIFF'S ASSERTION THAT THE FEC DID NOT RELY ON FIRST AMENDMENT CONSIDERATIONS IS INCORRECT

Plaintiff invokes the "*post hoc* rationalization" rule against the FEC and Intervenor Defendants while simultaneously faulting the FEC for – in Plaintiff's view – failing to adopt a regulation *in 2007* adequately reflective of broadly generalized language about disclosure issued by the Supreme Court *in 2010*. In its Reply to Intervenors, and in its earlier filings as well, Plaintiff presents a remarkably incomplete account of the FEC's rulemaking in 2007.

As demonstrated by the full rulemaking record, in 2007, it was unclear among practitioners, law professors, and the FEC's Commissioners whether the electioneering communication disclosure provisions could even be applied to communications that satisfied the

statutory definition of "electioneering communication" but which were not the "functional equivalent of express advocacy."[1] This was a central issue in the rulemaking proceedings with respect to disclosure. In response to a question about what disclosure requirements remained constitutional, a law professor testified:

> And so I don't know if somebody brings the claim that electioneering communication disclosures are unconstitutionally burdensome what answer you get because the level of scrutiny is less and the court looks at different interests. It is not just corruption or the appearance of corruption anymore. It is also voter information and the ability to assist the government in enforcing the law, so I honestly cannot say. My hunch is, *given the prevailing wind*, that if the case is postured properly that the court will say, we really meant it. We really meant that it has to be the functional [equivalent] of express advocacy for you guys to get your mitts on it in any way, shape or form, and we mean it this time. . . . So honestly, I don't know. It's a good question that reasonable people can disagree about. I could write briefs on both sides, I think, and feel pretty good that my research was sound, but that's where we are.

Hayward, Hearing Comments, FEC's Admin. Record, Tab 35 VH0592-94 (emphasis added).

To have enacted a regulation that accords with Plaintiff's position today would have been virtually inconceivable in 2007 and contrary to roughly 30 years of established campaign finance precedent. During the approximately three year period between the Supreme Court's decisions in *Wisconsin Right to Life, Inc.* and *Citizens United*, it was unclear whether a disclosure requirement could constitutionally attach to a communication distributed by an organization that was not a "political committee" that contained neither express advocacy nor its functional

---

[1] As one witness observed, federal campaign finance law "nowhere regulates the non-electoral activity of non-registrants in requiring disclosure of so-called electioneering communications broader than the WRTL II narrative...." Gold, AFL-CIO, Hearing Comments, FEC's Admin. Record, Tab 35 VH0766. Another witness remarked, "[t]he Commission cannot demand reporting without a nexus to federal elections. If it cannot regulate certain electioneering communications, it obviously cannot require reports on those expenditures." Morgan, Free Speech Coalition, Hearing Comments, FEC's Admin. Record, Tab 36 VH0801.

7

equivalent. The issue was not settled until the Supreme Court considered it roughly three years later in *Citizens United*. *See Citizens United*, 130 S. Ct. at 915 ("The principal opinion in WRTL limited 2 U.S.C. § 441b's restrictions on independent expenditures to express advocacy and its functional equivalent. . . . Citizens United seeks to import a similar distinction into BCRA's disclosure requirements.").

The other crucial disclosure question the FEC faced during the rulemaking proceedings was, if the disclosure requirements still applied, what kind of disclosure was required by a statute that was never intended to apply to corporations and labor unions. The FEC's Commissioners and expert witnesses almost uniformly evidenced an understanding that Congress had *not* considered the application of BCRA's disclosure requirements to corporate- and labor union-funded electioneering communications.[2] Even witnesses who urged the FEC to retain the disclosure requirement assumed that when reporting an electioneering communication, an organization was not actually required to disclose literally *all* of its contributors over $1,000 (as Plaintiff suggests here), but instead would simply disclose the source of funding used to pay for a specific communication. During the FEC's hearings, Commissioner von Spakovsky asked, "[t]hey have large donors, over 10,000 individual donors giving them money, but the donors are not giving the money tied to this particular advertising campaign. So how are we supposed to figure out what they report?" Commissioner von Spakovsky, Hearing Comments, FEC's Admin. Record, Tab 35

---

[2] *See, e.g.*, Chairman Lenhard, Hearing Comments, FEC's Admin. Record, Tab 35 VH0655 ("this draws in a broader group of entities to the regulatory regime than was initially contemplated"); Cmr. Weintraub, Hearing Comments, FEC's Admin. Record, Tab 35 VH0499 ("some of the commenters have raised some interesting problems with Alternative 1, notably in those instances where Congress may not have thought through what it was going to mean for them to have disclosure because they were not anticipating that these entities would be able to make electioneering communications"); Baran, U.S. Chamber of Commerce, Hearing Comments, FEC's Admin. Record, Tab 35 VH0661 ("Congress, and perhaps in BCRA, never contemplated this disclosure issue, because unions and corporations are going to be banned from making electioneering communications."); Trister, Alliance For Justice, Hearing Comments, FEC's Admin. Record, Tab 36 VH0815 ("The reporting requirements that exist that were written as part of BCRA . . . were not written for corporations, nonprofit corporations, for-profit corporations, and unions....").

8

VH0608. The witness responded, "I assume . . . you [the FEC] will say you can use 'first in first out' or any other reasonable accounting method. I don't know, but the Commission faces that exact question all the time when trying to identify what the source of funds are in an account…." Elias, Democratic Senatorial Campaign Committee, Hearing Comments, FEC's Admin. Record, Tab 35 VH0608-09.

Succinctly summarized versions of the regulation the FEC eventually adopted emerged from a variety of sources during the FEC's hearings following detailed discussions of both First Amendment parameters and practical issues. Professor Hayward, for example, suggested that the FEC require disclosure of "the isolated and idiosyncratic donor who is giving for this particular ad campaign, and no one else, and so then what you would have is the entity who is making the funding out of their general treasury funds reporting that on X date they spent Y for Z." Hayward, Hearing Comments, FEC's Admin. Record, Tab 35 VH0611-12.[3]

The FEC's hearing transcripts are replete with references to the First Amendment and consideration of what the Supreme Court's First Amendment jurisprudence requires. These transcripts also memorialize substantial discussion and consideration of electioneering communication donor disclosure. Contrary to Plaintiff's assertion in its Reply to Intervenors, these on-the-record statements and discussions make absolutely clear that the FEC took into account both the First Amendment and the Supreme Court's jurisprudence when it promulgated the disclosure regulation at issue here. Furthermore, it is also clear that the FEC's effort to limit

---

[3] *See also* Gold, AFL-CIO, Hearing Comments, FEC's Admin. Record, Tab 35 VH0644 ("And we believe that the approach taken by the statute for the regulations for reporting of independent expenditures provides an appropriate model."); Robinson, AFSCME, Hearing Comments, FEC's Admin. Record, Tab 35 VH0768 ("one thing you would look at is donative intent"); Trister, Alliance For Justice, Hearing Comments, FEC's Admin. Record, Tab 36 VH0838, 40 ("[G]eneral support grants . . . should not be reported as a donation . . . [T]he distinction ought to be made between earmarked and non-earmarked. That is exactly what Congress did on reporting IE's.").

the electioneering communication disclosure provision to the disclosure of relevant contributions, *i.e.*, ones that *actually* funded election related speech, were firmly grounded in First Amendment considerations.

## IV.   STATEMENTS OF SENATOR WELLSTONE REGARDING THE MEANING OF THE WELLSTONE AMENDMENT ARE ENTITLED TO DEFERENCE

Plaintiff dismisses statements made by Senator Wellstone regarding the Wellstone Amendment that very clearly demonstrate that that Amendment was intended to prohibit *all* corporate-funded electioneering communications.  Pl. Reply To Intervenors at 12.  Like any piece of legislative history, these statements perhaps are "not determinative," as Plaintiff suggests, but Senator Wellstone's statements are the clearest available evidence of the true intent behind the Wellstone Amendment and how fellow legislators likely understood that Amendment.

As Professors Eskridge and Frickey explain:

> The qualms courts and commentators may have about relying on statements made during floor debates and in legislative hearings often disappear when the speaker is the sponsor of the bill or amendment that includes the statutory provision being interpreted….The statements by sponsors are given such deference in part because the sponsors are the most knowledgeable legislators about the proposed bill and in part because their representations about the purposes and effects of the proposal are relied upon by other legislators.

William N. Eskridge, Jr. and Philip P. Frickey, *Legislation: Statutes and the Creation of Public Policy* 791 (2d ed. 1995).

## IV.   CONCLUSION

For the foregoing reasons, Intervenor Defendant Hispanic Leadership Fund respectfully requests that this Court grants its motion to dismiss, or in the alternative, grant Defendant Federal Election Commission's Motion for Summary Judgment.

Dated: September 30, 2011

                                                        Respectfully submitted,
                                                        **Holtzman Vogel PLLC**

                                                        By: _____/s/  Jason Torchinsky_____

                                                        Jason Torchinsky (Bar No. 976033)
                                                        jtorchinsky@holtzmanlaw.net
                                                        Scott S. Ward (Bar No. 477030)
                                                        sward@holtzmanlaw.net
                                                        Michael Bayes (Bar No. 501845)
                                                        mbayes@holtzmanlaw.net
                                                        HOLTZMAN VOGEL PLLC
                                                        45 North Hill Drive, Suite 100
                                                        Warrenton, VA 20186
                                                        Tel: (540) 341-8808
                                                        Fax: (540) 341-8809

                                                        *Counsel for Hispanic Leadership Fund*

## CERTIFICATE OF SERVICE

    I hereby certify that on September 30, 2011, I electronically filed the foregoing Hispanic Leadership Fund's Reply to Plaintiff Van Hollen's Reply to Intervenors' Opposition to Plaintiff's Motion for Summary Judgment and Opposition to Intervenor Hispanic Leadership Fund's Cross-Motion to Dismiss, with the Clerk of the Court using the CM/ECF system.

    The following were served via electronic mail: <u>Counsel for the Plaintiff</u>:

Roger Michael Witten - roger.witten@wilmerhale.com
Brian A. Sutherland - brian.sutherland@wilmerhale.com
Fiona J. Kaye - fiona.kaye@wilmerhale.com

<u>Counsel for Defendant Federal Election Commission</u>: David Brett Kolker - dkolker@fec.gov

Harry Jacobs Summers - hsummers@fec.gov
Holly Jean Baker - hbaker@fec.gov
Seth E. Nesin - snesin@fec.gov

<u>Counsel for Defendant Center for Individual Freedom:</u>

Thomas W. Kirby - tkirby@wileyrein.com

 

                                                   /s/
                                              Jason Torchinsky