**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRIS VAN HOLLEN,<br><br>Plaintiff,<br>v.<br><br>FEDERAL ELECTION COMMISSION,<br><br>Defendant,<br><br>and<br><br>CENTER FOR INDIVIDUAL FREEDOM,<br><br>Defendant,<br><br>and<br><br>HISPANIC LEADERSHIP FUND,<br><br>Defendant. | Civ. A. No. 1:11-cv-00766 (ABJ) |

**DEFENDANT CENTER FOR INDIVIDUAL FREEDOM'S REPLY TO PLAINTIFF VAN HOLLEN'S OPPOSITION TO CFIF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Jan Witold Baran (D.C. Bar No. 233486)
Thomas W. Kirby (D.C. Bar No. 915231)
Caleb P. Burns (D.C. Bar No. 474923)
Andrew G. Woodson (D.C. Bar No. 494062)
WILEY REIN LLP
1776 K St., NW
Washington, D.C. 20006
202.719.7000

September 30, 2011

*Counsel for Center for Individual Freedom*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

I. Plaintiff Does Not Dispute Many Key Points. ........ 1

II. If *Citizens United* Validates Anything, It Is the Challenged Regulation. ........ 2

III. Disclosure Statutes Must Be Tailored to Avoid Placing Unconstitutional Burdens on Speakers. ........ 3

A. *Citizens United* Does Not Suggest That Congress Tailored the Disclosure Statute Or That Tailoring Is Not Required. ........ 3

B. Only the FEC Conducted a First Amendment Tailoring Analysis. ........ 5

IV. The Challenged Regulation Is Justified By *Chevron* Step One Analysis. ........ 7

A. CFIF's Step One Argument Is Fully Consistent With *Chenery.* ........ 7

B. CFIF's First Amendment Arguments Also Are Consistent With *Chenery*. ........ 8

C. The Challenged Regulation Is Clearly Required By Congress. ........ 9

V. Any Remedy Should Not Chill Core Speech. ........ 10

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

**AFL-CIO v. FEC*,
333 F.3d 168 (D.C. Cir. 2003) .......... 5, 6, 8

*Automotive Parts & Accessories Association v. Boyd*,
407 F.2d 330 (D.C. Cir.1968) .......... 6

*Bank of America, N.A. v. FDIC*,
244 F.3d 1309 (11th Cir. 2001) .......... 8

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*,
419 U.S. 281 (1974) .......... 6

*Buckley v. American Constitutional Law Foundation, Inc.*,
525 U.S. 182 (1999) .......... 4

**Buckley v. Valeo*,
424 U.S. 1 (1976) .......... 4, 9

*Business Roundtable v. SEC*,
905 F.2d 406 (D.C. Cir. 1990) .......... 8

*Casino Airlines, Inc. v. NTSB*,
439 F.3d 715 (D.C. Cir. 2006) .......... 6

**Center for Individual Freedom, Inc. v. Tennant*,
No. 1:08-cv-00190, 2011 WL 2912375 (S.D. W.Va. July 18, 2011) .......... 6

*Ceramica Regiomontana, S.A. v. United States*,
810 F.2d 1137 (Fed. Cir. 1987) .......... 6

*Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc*,
467 U.S. 837 (1984) .......... 8

**Citizens United v. FEC*,
130 S. Ct. 876 (2010) .......... 2

*Common Cause v. FEC*,
906 F.2d 705 (D.C. Cir. 1990) .......... 7, 8

*Diouf v. Napolitano*,
634 F.3d 1081 (9th Cir. 2011) .......... 8

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building Trades Council*,
485 U.S. 568 (1988)....................8

*FEC v. Massachusetts Citizens for Life, Inc.*,
479 U.S. 238 (1986)....................4

*FEC v. Wisconsin Right to Life, Inc.*,
551 U.S. 449 (2007)....................5

*Graceway Pharmaceuticals, Inc. v. Sebelius*,
No. 10-1154, 2011 WL 1753801 (D.D.C. May 10, 2011)....................6

*Larson v. Valente*,
456 U.S. 228 (1982)....................5

*McIntyre v. Ohio Electric Commission*,
514 U.S. 334 (1995)....................4

*Pennsylvania Department of Corrections v. Yeskey*,
524 U.S. 206 (1998)....................4

*Public Citizen, Inc. v. FAA*,
988 F.2d 186 (D.C. Cir. 1993)....................6

*Safeguarding the Historic Hanscom Area's Irreplaceable Resources, Inc. v. FAA*,
No. 10-1972, 2011 WL 2685748 (1st Cir. July 12, 2011)....................9

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947)....................7

*Tourus Records, Inc. v. DEA*,
259 F.3d 731 (D.C. Cir. 2001)....................6

*Turner Broadcast System, Inc. v. FCC*,
512 U.S. 622 (1994)....................5

*United States v. Dansby*,
509 F. Supp. 188 (N.D. Ohio 1981)....................9

*United Video, Inc. v. FCC*,
890 F.2d 1173 (D.C. Cir. 1989)....................8

## STATE CASES

*LEH Properties, Inc. v. Pheasant Run Association*,
No. 10CA009780, 2011 WL 378783 (Ohio Ct. App. Feb. 7, 2011)....................................3

*Summit Water Distributing Co. v. Utah State Tax Commission*,
No. 20090921, 2011 WL 4036308 (Utah July 29, 2011) ....................................................3

## STATUTES AND REGULATIONS

2 U.S.C. § 441b (2002) .........................................................................................................4

Pub. L. No. 107-155, 116 Stat. 81 (2002)...........................................................................4

72 Fed. Reg. 72899 (Dec. 26, 2007)....................................................................................6

72 Fed. Reg. 50261 (Aug. 31, 2007)....................................................................................5

Michigan Nonprofit Corporation Act, Pub. Act 1982, No. 162, § 101 *et seq*. ..........................3

## MISCELLANEOUS

*Brief for Appellee, *Citizens United v. FEC*,
130 S. Ct. 876 (2010) (No. 08-205), available at
http://fec.gov/law/litigation/citizens_united_sc_08_fec_brief.pdf .....................................2

Green Bay Packers, *Community*, available at
http://www.packers.com/community/shareholders.html ....................................................3

Defendant Center for Individual Freedom ("CFIF") respectfully submits its reply to Plaintiff Van Hollen's September 15 Opposition to Intervenor Center for Individual Freedom's Cross-Motion for Summary Judgment (Dkt. No. 38) ("Opposition" or "Pl. Opp.").

## ARGUMENT

### I. Plaintiff Does Not Dispute Many Key Points.

Plaintiff Van Hollen's Opposition does not dispute key elements of CFIF's Summary Judgment Motion:

- **Prematurity:** Plaintiff does not deny that his core arguments are being presented for the first time to this Court without permitting the FEC commissioners to address them. Plaintiff does not dispute that the 2007 pro-regulatory rulemaking comments – some authored by the same skilled counsel representing Plaintiff here, *see* CFIF's Cross-Mot. for Summ. J. at 4 & n.12, 6 (Dkt. No. 33) – failed to advocate the supposedly plain statutory meaning Plaintiff now asserts. Plaintiff does not deny that the FEC commissioners had no occasion to evaluate the regulation in light of the 2008 and 2010 election cycles. Nor does Plaintiff deny that review here is limited to the administrative record and that its arguments thus are premature.

- **Inconsistency:** Plaintiff does not deny that he and his allies repeatedly told the public and fellow legislators that the proposed DISCLOSE Act would impose "new" and "unprecedented" disclosure requirements. Nor does Plaintiff deny that the disclosure requirements he now attributes to pre-existing law duplicate those that the DISCLOSE Act proposed – and Congress rejected. Plaintiff also does not deny that, if his prior statements about the DISCLOSE Act were accurate, his current portrayal of the scope of the present disclosure statute is inaccurate.

- **Lawmaker Understanding:** Plaintiff does not deny that descriptions of the present law by its key supporters, made while the law was being enacted, tied disclosure to purpose – *e.g.*, those who "sponsor[] . . . an electioneering communication." Pl. Mem. in Supp. of Summ. J. at 4 n.2 (Dkt. No. 20). Nor does Plaintiff deny that the obvious and logical "purpose" targeted by the disclosure statute is to support electioneering communications. Plaintiff suggests no other plausible purpose.

Moreover, where Plaintiff raises a dispute, his arguments do not withstand scrutiny for the reasons explained below.

## II. If *Citizens United* Validates Anything, It Is the Challenged Regulation.

Plaintiff Van Hollen asserts that *Citizens United v. FEC*, 130 S. Ct. 876, 914-16 (2010), resolves the constitutional issues in his favor. *See* Pl. Opp. at 5. The opposite is true.

The FEC adopted the regulation Plaintiff challenges here in 2007, three years before *Citizens United*. Reflecting that regulation, the Government's *Citizens United* brief explained that disclosure was limited to "the amount spent on the advertisement and any large contributions *earmarked* to underwrite it." Brief for Appellee at 39, *Citizens United v. FEC*, 130 S. Ct. 876 (2010) (No. 08-205), available at http://fec.gov/law/litigation/citizens_united_sc_08_fec_brief.pdf (emphasis added). *Citizens United* then held that the required disclosure of "*certain* contributors" – *i.e.*, those contributing large, "earmarked" amounts as explained by the Government – was a constitutional and "effective disclosure" regime. 130 S. Ct. at 914, 916 (emphasis added).[1]

[1] *Compare Citizens United v. FEC*, 130 S. Ct. at 914 (the disclosure "statement must identify the person making the expenditure, the amount of the expenditure, the election to which the communication was directed, and the names of certain contributors") *with* Brief for Appellee at 39, *Citizens United v. FEC*, 130 S. Ct. 876 (No. 08-205) (the "challenged disclosure provisions require the sponsor of an electioneering communication to identify itself to the

Plaintiff here contends that limiting disclosure to "earmarked" amounts – *i.e.*, those designated for electioneering communications – renders the regulation invalid. Thus, his position is directly contrary to *Citizens United*.

## III. Disclosure Statutes Must Be Tailored to Avoid Placing Unconstitutional Burdens on Speakers.

### A. *Citizens United* Does Not Suggest That Congress Tailored the Disclosure Statute Or That Tailoring Is Not Required.

Plaintiff asserts that *Citizens United* approved "disclosure requirements for corporations and their shareholders, a term relevant only with respect to for-profit corporations." Pl. Opp. at 6 (emphasis in original). Plaintiff's theory seems to be that, because Congress intended to require disclosure from for-profit corporations (*i.e.*, those with shareholders), it must have tailored the statute with that in mind. Plaintiff's position is both mistaken and irrelevant.

Plaintiff is mistaken because non-profit corporations can and do have shareholders.[2] Thus, the reference to shareholders did not equate to for-profit corporations.

Plaintiff's point also is irrelevant. The Court was speaking of the disclosure regime as it existed in 2010, which included the regulation Plaintiff now challenges, and there is no dispute that this regime applies to for-profit corporations. *Citizens United* does not say, or even hint, that at the time the disclosure statute was enacted, Congress expected it to apply to for-profit

---

Commission, disclose the amount spent on the advertisement and any large contributions earmarked to underwrite it, and identify itself in the advertisement itself") (emphasis added).

[2] *See, e.g.*, *Summit Water Distrib. Co. v. Utah State Tax Comm'n*, No. 20090921, 2011 WL 4036308, at *1 (Utah July 29, 2011); *LEH Properties, Inc. v. Pheasant Run Ass'n*, No. 10CA009780, 2011 WL 378783, at *1 (Ohio Ct. App. Feb. 7, 2011). Many state nonprofit statutes expressly provide for shareholders. *See, e.g.*, Michigan Nonprofit Corporation Act, Pub. Act 1982, No. 162, § 101 *et seq.* One prominent example of such an entity is the Green Bay Packers, an NFL franchise owned by Green Bay Packers, Inc., a "nonprofit corporation" with "112,158 stockholders." Green Bay Packers, *Community*, available at http://www.packers.com/community/shareholders.html. In the nonprofit context, the terms "shareholder" and "member" often are used interchangeably. The statement that nonprofit corporations do not have shareholders is shorthand for the proposition that ultimate ownership of nonprofit corporations does not lie with shareholders.

corporations. To the contrary, such corporations were flatly forbidden to engage in the types of activities that might trigger disclosure. *See* 2 U.S.C. § 441b (2002).

No party to this action disputes that the disclosure statute now applies to all corporations and labor unions. *See Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998) (a statute typically applies according to its plain language, even if particular applications may not have been foreseen). CFIF's point is, instead, that because the law as-enacted forbade application of the disclosure requirements to corporations and labor unions, Congress never had any occasion to tailor the disclosure requirements to the burdens such application might produce. Strikingly, Plaintiff offers no evidence that Congress engaged in any such tailoring analysis.[3]

Plaintiff's Opposition suggests (at 5-6) that *Citizens United* somehow held tailoring was unnecessary. But the part of the opinion it cites and quotes merely says that disclosure can have substantial benefits, a proposition that traces back at least to *Buckley v. Valeo*, 424 U.S. 1, 66-67 (1976). That is not at all the same thing. If a speech burden lacks important benefits, it fails exacting scrutiny at the very threshold. *See Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 204 (1999); *McIntyre v. Ohio Elec. Comm'n*, 514 U.S. 334, 347-53 (1995). If such

---

[3] Plaintiff continues to assert incorrectly that Congress intended the Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107-155, 116 Stat. 81, 114 (2002) ("BCRA"), to permit certain corporations to engage in electioneering communications – namely corporations described in *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238 (1986) ("MCFL") – to support his argument that Congress, therefore, must have contemplated disclosure by corporations. Pl. Opp. at 11-12. But as Plaintiff concedes: "[T]he Supreme Court construed BCRA as permitting *MCFL* corporations to make 'electioneering communications.'" *Id.* at 11 (emphasis added). The Supreme Court's construction was required because BCRA – by its terms – forbade electioneering communications by *MCFL* corporations as confirmed by the congressional record. *See* CFIF's Cross-Mot. for Summ. J. at 11 n.17 (Dkt. No. 33). Plaintiff further states that if this were the case, "then the Supreme Court's discussion in *Citizens United* of the applicability of § 434(f)'s contributor disclosure provisions to for-profit and non-profit corporations would have been utterly nonsensical." Pl. Opp. at 11. As previously explained, the Supreme Court was speaking of the regime that arose when the ban on corporate electioneering communications was invalidated, not what was contemplated by Congress when enacting BCRA.

benefits exist, proponents then must show that the burdens imposed are closely tailored to those benefits.[4] *Citizens United* does not suggest otherwise.

In short, before the disclosure statute could be applied broadly to all corporations and labor unions, the First Amendment required a tailoring analysis. The FEC conducted such an analysis in its 2007 rulemaking and concluded that disclosure of large earmarked transfers was justified. Regardless of whether that tailored scope of disclosure is attributed to the statute itself (as CFIF contends) or to a discretionary judgment (as the FEC contends), the tailoring requirement is satisfied for such disclosures. But no tailoring analysis has been conducted with respect to the broader disclosure requirements Plaintiff now attributes to the statute, and nothing in *Citizens United* excuses that failure.

**B. Only the FEC Conducted a First Amendment Tailoring Analysis.**

When *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007), struck down general prohibitions of corporate-funded electioneering communications, the disclosure statute suddenly had much wider application than Congress had foreseen. Because Congress had not conducted the necessary First Amendment tailoring analysis, the FEC took on that role. Its Notice of Proposed Rulemaking sought comment on "concerns about . . . First Amendment rights." Notice of Proposed Rulemaking on Electioneering Commc'ns, 72 Fed. Reg. 50261, 50262 (Aug. 31, 2007). It received comments addressing the burden and benefits of alternative disclosure requirements. They focused on burdens on "privacy interests" and "request[s] to remain anonymous," and the FEC explained that its regulations were "narrowly tailored" in a

---

4 *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994) (even restrictions on commercial speech must not "burden substantially more speech than is necessary"); *Larson v. Valente*, 456 U.S. 228, 251 (1982) ("registration and reporting requirements" facially invalid because defenders "failed to demonstrate [law] is 'closely fitted'"); *AFL-CIO v. FEC*, 333 F.3d 168, 178 (D.C. Cir. 2003) (striking down regulation where the FEC did not "tailor its policy to avoid unnecessarily burdening the First Amendment rights").

"constitutional way," using "carefully designed reporting requirements [that] do not create unreasonable burdens." Final Rule and Explanation and Justification on Electioneering Commc'ns, 72 Fed. Reg. 72899, 72901 (Dec. 26, 2007). That is the language of First Amendment tailoring.[5]

Plaintiff tries to wish this away, saying that the Explanation and Justification did not literally contain the words "First Amendment," and that the focus on donor privacy and anonymous speech might mean the FEC ignored other aspects of tailoring. However, "the Federal Election Commission has as its sole purpose the regulation of core constitutionally protected activity." *AFL-CIO v. FEC*, 333 F.3d 168, 170 (D.C. Cir. 2003). Since the FEC obviously understood that narrow tailoring was required, there is no reason to doubt that it sought to satisfy the First Amendment in all respects, a judgment that is confirmed by the fact that no one has attacked the regulation as inadequately tailored.

In any event, the need for tailoring is clear. *Ctr. for Individual Freedom, Inc. v. Tennant*, No. 1:08-cv-00190, 2011 WL 2912375 (S.D. W.Va. July 18, 2011), is directly on point and squarely holds that the disclosure regime Plaintiff proposes here must be tailored precisely as the FEC required in the challenged regulation. Plaintiff's assertion (Pl. Opp. at 6) that the decision

[5] The requirement that the agency articulate its rationale is "not particularly demanding[; only] a 'brief statement' is necessary." *Graceway Pharms., Inc. v. Sebelius*, No. 10-1154, 2011 WL 1753801, at *6 (D.D.C. May 10, 2011) (quoting *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001)). Indeed, the "agency's response to public comments need only 'enable us to see what major issues of policy were ventilated . . . and why the agency reacted to them as it did.'" *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) (quoting *Automotive Parts & Accessories Ass'n v. Boyd*, 407 F.2d 330, 338 (D.C.Cir.1968)). Under these principles, a reviewing court must uphold a regulation "of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). *See also Casino Airlines, Inc. v. NTSB*, 439 F.3d 715, 718 (D.C. Cir. 2006) (upholding NTSB's determination even though its "language could have been more direct"); *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987) ("lack of an explicit statement in the agency's published notices [did not prevent the] court from discerning the path of the agency in its decision-making process").

is "contrary to *Citizens United*," is unsupported and simply not true, as just discussed. Plaintiff's mere *ipse dixit* that the district court's considered opinion is "poorly reasoned" provides no basis for disregarding the First Amendment's settled demand that disclosure burdens on core speech must be carefully tailored.

In short, no element of government ever has conducted a tailoring analysis of the sweeping disclosure requirements Plaintiff now advocates. There was no such congressional analysis when the disclosure statute was enacted or when the DISCLOSE Act was rejected. And the FEC's 2007 rulemaking concluded that disclosure of transfers for the purpose of supporting electioneering communications was sufficient. Thus, the present statute cannot constitutionally be applied to require the sweeping disclosures Plaintiff now seeks and the FEC regulation cannot be contrary to law for failing to demand unconstitutional disclosures.

## IV. The Challenged Regulation Is Justified By *Chevron* Step One Analysis.

The FEC viewed the disclosure statute as ambiguous and exercised judgment and discretion in promulgating the challenged regulation. Thus, the agency defends the challenged regulation at *Chevron* Step Two. Invoking the general rule that agency action may be affirmed only on the grounds relied upon by the agency, Plaintiff argues that CFIF is precluded from relying on *Chevron* Step One to contend that the challenged regulation implements clear Congressional intent. Alternatively, Plaintiff contends that Step One does not support the regulation. Plaintiff is mistaken on both points.

### A. CFIF's Step One Argument Is Fully Consistent With *Chenery.*

As a general rule, a regulation may be defended "solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). *See also Common Cause v. FEC*, 906 F.2d 705, 707 (D.C. Cir. 1990). The rationale of the *Chenery* doctrine is that courts must not usurp "the domain which Congress has set aside exclusively for the administrative agency," 322

U.S. at 196, by making a "judgment which an administrative agency alone is authorized to make," *Common Cause*, 906 F.2d at 706. *See also United Video, Inc. v. FCC*, 890 F.2d 1173, 1190 (D.C. Cir. 1989) ("The purpose of *Chenery* is to insure that courts do not trespass on agency discretion."). But these issues do not arise at Step One of the *Chevron* analysis.

The point of CFIF's Step One argument is that Congress did not give the FEC discretion whether to consider the purpose of a transfer but, instead, clearly mandated such consideration. It is up to the Court, using all the "traditional tools" of statutory construction, to determine if that was the clear intent of Congress, and if so, "the court, as well as the agency, must give [it] effect." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 & n.9 (1984). Thus, "the *Chenery* principle does not apply" to CFIF's Step One position. *Bank of Am., N.A. v. FDIC*, 244 F.3d 1309, 1319-20 (11th Cir. 2001) (collecting authority that *Chenery* does not limit a Step One defense).[6]

**B. CFIF's First Amendment Arguments Also Are Consistent With *Chenery*.**

Plaintiff's claim that *Chenery* precludes CFIF's First Amendment arguments is doubly mistaken. Plaintiff is wrong as a matter of law because the rule of constitutional avoidance is a "traditional tool" of statutory construction that may be freely considered in a Step One analysis. *Chevron*, 467 U.S. at 843 n.9; *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. Constr. Trades Council*, 485 U.S. 568, 575 (1988); *AFL-CIO*, 333 F.3d at 175-79 (constitutional avoidance may apply at either step of the inquiry in *Chevron*); *Diouf v. Napolitano*, 634 F.3d 1081, 1086 n.7 (9th Cir. 2011) (the doctrine is a "cardinal principle" of construction). Plaintiff is

---

6 Perhaps a regulation that an agency expressly bases on one statute may not be justified by appeal to the plain meaning of a second statute, *Business Roundtable v. SEC*, 905 F.2d 406, 407 (D.C. Cir. 1990), but nothing like that has occurred here.

wrong as a matter of fact because the FEC addressed First Amendment concerns in adopting the challenged regulation, as previously explained.

**C. The Challenged Regulation Is Clearly Required By Congress.**

Plaintiff adopts the fallacious strategy of "divide and conquer," contending that each element of CFIF's Step One argument is not conclusive in isolation. But it is a legal commonplace that several factors taken together may produce a certainty that none, taken alone, would warrant.[7] As explained in CFIF's opening brief:

- The statute's definition of "contribution" in terms of purpose is strong evidence that Congress intended the related term "contributor" also to connote an election-influencing purpose.
- The dictionary definitions of "contributor" cited by Van Hollen include references to purpose.
- As far back as *Buckley*, the Supreme Court has narrowly construed a statute to require disclosure only where contributions are "earmarked for political purposes." 424 U.S. at 79-80. The opinion in *CFIF v. Ireland* is the most recent example of this requirement.
- Key legislators confirmed that the disclosure regime must be tied to funds given for the purpose of supporting electioneering communications.
- A purpose limitation avoids serious First Amendment concerns.

Viewed together, these converging considerations show that Congress clearly intended to require disclosure only of transfers made with the purpose of supporting electioneering communications.

---

[7] *See Safeguarding the Historic Hanscom Area's Irreplaceable Res., Inc. v. FAA*, No. 10-1972, 2011 WL 2685748, at *9 (1st Cir. July 12, 2011) ("even if none of the factors cited by the FAA standing alone" were adequate, the "whole is sometimes greater than the sum of the parts . . . ."); *United States v. Dansby*, 509 F. Supp. 188, 197-98 (N.D. Ohio 1981) (even if *stare decisis* and congressional inaction are not separately controlling, their "synergistic effect is a compelling aid in statutory construction") (internal quotation marks and citation omitted).

And they certainly refute Plaintiff's Step One claim that Congress clearly ruled out any consideration of purpose.

## V. Any Remedy Should Not Chill Core Speech.

The Court should grant summary judgment dismissing Plaintiff's complaint with prejudice. Such a ruling will pretermit any consideration of remedy. But if, for some reason, the Court were to reach remedial issues, it should take great care to avoid creating legal uncertainty that would operate to chill the exercise of core First Amendment rights. Put another way, the present regulation should remain in effect until and unless a successor is in place.

Plaintiff argues that vacating the present regulation poses no problem because the disclosure statute can be applied according to its terms. But Plaintiff is advocating a newly discovered statutory meaning here that is at odds with the reading of the FEC and CFIF and that, according to the federal district court in West Virginia, raises serious constitutional questions.

Plaintiff elected not to participate in the 2007 rulemaking. Plaintiff's allies in that rulemaking never advanced the statutory construction that Plaintiff now advocates. In advocating the DISCLOSE Act, Plaintiff told the public and fellow legislators that the broad disclosures he now seeks were not part of existing law. Plaintiff allowed the 2008 and 2010 elections to occur under the present regulation. At this point, Plaintiff cannot reasonably ask this Court to deprive corporations of any regulatory guidance.

## CONCLUSION

For the reasons presented by CFIF and the FEC (which CFIF incorporates by reference), the Court should grant the summary judgment dismissing the complaint with prejudice.

September 30, 2011

Respectfully submitted,

/s/ Thomas W. Kirby

Jan Witold Baran (D.C. Bar No. 233486)
E-mail: jbaran@wileyrein.com
Thomas W. Kirby (D.C. Bar No. 915231)
E-mail: tkirby@wileyrein.com
Caleb P. Burns (D.C. Bar No. 474923)
E-mail: cburns@wileyrein.com
Andrew G. Woodson (D.C. Bar No. 494062)
E-mail: awoodson@wileyrein.com
WILEY REIN LLP
1776 K St., NW
Washington, D.C. 20006
202.719.7000

*Counsel for Center for Individual Freedom*