# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 12-5117**

CENTER FOR INDIVIDUAL FREEDOM,
    APPELLANT,

AND

HISPANIC LEADERSHIP FUND,
    APPELLANT,

v.

CHRISTOPHER VAN HOLLEN, JR.,
    APPELLEE,

AND

FEDERAL ELECTION COMMISSION,
    APPELLEE.

Consolidated with 12-5118

**September Term, 2012**
FILED ON: SEPTEMBER 18, 2012

MANDATE

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00766)

Before: BROWN, *Circuit Judge*, and EDWARDS and RANDOLPH, *Senior Circuit Judges*

### JUDGMENT

This cause was considered on the record from the United States District Court for the District of Columbia, briefed by the parties, and argued by counsel on September 14, 2012. It is

**ORDERED** and **ADJUDGED** that the judgment of the District Court is hereby reversed.

A True Copy:
United States Court of Appeals
for the District of Columbia Circuit

By: _____ Deputy Clerk

Appellee, Representative Christopher Van Hollen, Jr., brought a lawsuit challenging 11 C.F.R. § 104.20(c)(9), a regulation promulgated by the Federal Election Commission ("FEC"), that purports to implement § 201(f)(2)(F) of the Bipartisan Campaign Reform Act ("BCRA"), 2 U.S.C. § 434. BCRA § 201(f) reads, in relevant part, as follows:

(f) Disclosure of electioneering communications

(1) Statement required

Every person who makes a disbursement for the direct costs of producing and airing electioneering communications in an aggregate amount in excess of $10,000 during any calendar year shall, within 24 hours of each disclosure date, file with the Commission a statement containing the information described in paragraph (2).

(2) Contents of statement

Each statement required to be filed under this subsection shall be made under penalty of perjury and shall contain the following information:

. . . .

(E) If the disbursements were paid out of a segregated bank account which consists of funds contributed solely by individuals who are United States citizens or nationals or lawfully admitted for permanent residence (as defined in section 1101(a)(20) of Title 8) directly to this account for electioneering communications, the names and addresses of all contributors who contributed an aggregate amount of $1,000 or more to that account during the period beginning on the first day of the preceding calendar year and ending on the disclosure date. Nothing in this subparagraph is to be construed as a prohibition on the use of funds in such a segregated account for a purpose other than electioneering communications.

(F) If the disbursements were paid out of funds not described in subparagraph (E), the names and addresses of all contributors who contributed an aggregate amount of $1,000 or more to the person making the disbursement during the period beginning on the first day of the preceding calendar year and ending on the disclosure date.

The disputed regulation, 11 C.F.R. § 104.20(c)(9), was promulgated by the FEC in 2007. It states that:

(9) If the disbursements were made by a corporation or labor organization pursuant to 11 CFR 114.15, the name and address of each person who made a donation aggregating $1,000 or more to the corporation or labor organization, aggregating since the first day of the preceding calendar year, which was made for the purpose of furthering electioneering communications.

Appellee's standing to pursue his complaint was challenged in the District Court, and the same challenge has been raised again in this appeal. The District Court rejected the challenge, *see Van Hollen v. FEC*, 851 F. Supp. 2d 69, 77-78 (D.D.C. 2012), and we do as well. Appellee has asserted a right to judicial review under the Administrative Procedure Act ("APA"). The APA provides that: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. To satisfy the requirements of § 702, "the person claiming a right to sue must identify some 'agency action' that affects him in the specified fashion; it is judicial review 'thereof' to which he is entitled." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). In addition, "the party seeking review under § 702 must show that he has 'suffer[ed] legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'" *Id.* at 883. In challenging the FEC's promulgation of 11 C.F.R. § 104.20(c)(9), Appellee easily satisfied the requirements of § 702 and demonstrated his Article III standing by showing that he would be unable to obtain disclosure of information under the BCRA because of the allegedly unlawful restrictions imposed by 11 C.F.R. § 104.20(c)(9). *See, e.g., FEC v. Akins*, 524 U.S. 11, 21 (1998) (holding that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute" (citation omitted)).

On the merits of his claim, Appellee argued to the District Court that the regulation should be struck down because the "purpose" requirement of 11 C.F.R. § 104.20(c)(9) violated the plain meaning of 2 U.S.C. § 434(f). In particular, as the District Court explained, Appellee contended that

> the BCRA provides that every "person" who funds "electioneering communications" must disclose "all contributors," 2 U.S.C. § 434(f)(1), (f)(2)(F), and that Congress explicitly defined "person" to include corporations and labor organizations. *Id.* § 431(11). The provision plainly requires "every person" to identify "all" contributors who contributed over $1,000 during the reporting period, and there are no terms limiting that requirement to call only for the names of those who transmitted funds accompanied by an express statement that the contribution was intended for the purpose of funding electioneering contributions.

*Van Hollen*, 851 F. Supp. 2d at 80. On this interpretation of the BCRA, the District Court held that the text of the statute "favors the [Appellee] at *Chevron* step one." *Id.*; *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984) (under *Chevron* Step One, "[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect"). The District Court thus granted summary judgment in favor of Appellee, because, in its view, in enacting 2 U.S.C. § 434(f)(2)(F), "Congress spoke plainly [and] did not delegate authority to the FEC to narrow the disclosure requirement through agency rulemaking." *Van Hollen*, 851 F. Supp. 2d at 89. We disagree and reverse.

The FEC has not appealed the judgment of the District Court. Notice of Def. FEC (Apr. 26, 2012) ("The Federal Election Commission hereby advises that it will not appeal the Court's order of March 30, 2012 (Doc. No. 49)."). However, Intervenors, the Center for Individual Freedom and the

Hispanic Leadership Fund (together "the Intervenors"), who appeared in support of the FEC before the District Court, filed a timely appeal with this court seeking reversal of the District Court's judgment. We are satisfied that the Intervenors have standing to pursue this appeal, for they have convincingly demonstrated that the District Court's decision overturning 11 C.F.R. § 104.20(c)(9) has caused them injury that will be redressed by a favorable decision from this court. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 64-65 (1997) (explaining that an intervenor may "step into the shoes of the original party [if] the intervenor independently fulfills the requirements of Article III"; *i.e.*, the intervenor "must show, first and foremost, an invasion of a legally protected interest that is concrete and particularized and actual or imminent" (quotations and citations omitted)); *see also Diamond v. Charles*, 476 U.S. 54, 68-70 (1986) (explaining that "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III," which includes showing "an injury with a nexus to the substantive character of the statute or regulation at issue"). Appellee does not challenge the Intervenors' standing to appeal.

After reviewing the record with care, we conclude that the District Court erred in holding that Congress spoke plainly when it enacted 2 U.S.C. § 434(f), thus foreclosing any regulatory construction of the statute by the FEC. The statute is anything but clear, especially when viewed in the light of the Supreme Court's decisions in *Citizens United v. FEC*, 558 U.S. 310 (2010), and *FEC v. Wis. Right to Life, Inc.* ("*WRTL II*"), 551 U.S. 449 (2007). Furthermore, we do not agree with the District Court that the words "contributors" and "contributed" in 2 U.S.C § 434(f)(2)(F) cannot be construed to include a "purpose" requirement, especially when it is clear that subsection (F) only applies to "disbursement[s] for the direct costs of producing and airing electioneering communications." 2 U.S.C. § 434(f)(1). Citing two dictionaries, the District Court thought that "the plain meaning of 'contribute' does not include a purpose or intent element, and the FEC's attempt to add one is an alteration, and not a clarification." *Van Hollen*, 851 F. Supp. 2d at 87 (footnote omitted). The Court failed to notice that other, respected dictionaries define "contribute" in a way that is consistent with the regulation. For example, WEBSTER'S NEW INTERNATIONAL DICTIONARY 496 (3d ed. 1993) states that "contribute" means "to give or grant in common with others (as to a common fund or for a common purpose): give (money or other aid) for a specified object"; "to furnish or supply (as a share or part to the advance of a project or development)." The point here is that "citing to dictionaries creates a sort of optical illusion, conveying the existence of certainty—or 'plainness'—when appearance may be all there is." A. Raymond Randolph, *Dictionaries, Plain Meaning, and Context in Statutory Interpretation*, 17 HARV. J.L. & PUB. POL'Y 71, 72 (1994).

Moreover, "employing traditional tools of statutory construction," we do not find that "Congress had an intention on the precise question at issue" in this case. *Chevron*, 467 U.S. at 843 n.9. Indeed, it is doubtful that, in enacting 2 U.S.C. § 434(f), Congress even anticipated the circumstances that the FEC faced when it promulgated 11 C.F.R. § 104.20(c)(9). It was due to the complicated situation that confronted the agency in 2007 and the absence of plain meaning in the statute that the FEC acted pursuant to its delegated authority under 2 U.S.C. § 37d(a)(8) to fill "a gap" in the statute. *Chevron*, 467 U.S. at 843-44. Therefore, the District Court erred in disposing of this case under *Chevron* Step One.

The FEC's promulgation of 11 C.F.R. § 104.20(c)(9) reflects an attempt by the agency to provide regulatory guidance under the BCRA following the partial invalidation of the speech prohibition imposed on corporations and labor unions in the context of "electioneering communications." See *WRTL II*, 551 U.S. 449. Unfortunately, as the parties' arguments in this case have revealed, the agency's adoption of § 104.20(c)(9) has raised as many questions as it purported to resolve. For example, neither the court nor the parties understand the reference to 11 C.F.R. § 114.15 in § 104.20(c)(9). The FEC's failure to participate in this appeal makes it impossible for the court to fully understand the agency's position on numerous issues that have been raised by the parties with respect to the meaning of the statute, the intended reach of the disputed regulation, and the import of the Supreme Court's decisions addressing campaign finance law. Therefore, the court is in no position to assess the parties' arguments on whether § 104.20(c)(9) is reasonable, and thus entitled to deference under *Chevron* Step Two, see *Chevron*, 467 U.S. at 843-44, or whether the regulation survives arbitrary and capricious review under *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983). Indeed, these matters were never addressed by the District Court.

"Instead of trying to divine how the [FEC] would resolve the [many questions that have been raised by this appeal,] we think it best to send this matter to the Commission under the doctrine of primary jurisdiction." *In re Starnet, Inc.*, 355 F.3d 634, 639 (7th Cir. 2004). We use the phrase "primary jurisdiction," as did the Seventh Circuit in *In re Starnet*, with reference to the "doctrine that allows a court to refer an issue to an agency that knows more about the issue." *Id.*; see also *Allnet Commc'n Serv., Inc v. Nat'l Exch. Carrier Ass'n, Inc.*, 965 F.2d 1118, 1120 (D.C. Cir. 1992) (explaining that a dismissal pursuant to the doctrine of primary jurisdiction rests in part on "the advantages of allowing an agency to apply its expert judgment"). Pursuant to this doctrine, we will leave it to the FEC in the first instance to explain the meaning and scope of 11 C.F.R. § 104.20(c)(9), or, if the agency deems it appropriate, to engage in further rulemaking to better clarify the regulatory regime covering the campaign finance provisions of the BCRA.

We hereby reverse the decision of the District Court and vacate the summary judgment in favor of Appellee. The case is hereby remanded to the District Court, which will retain jurisdiction over the matter. Upon remand, the District Court shall first refer the matter to the FEC for further consideration. The FEC will promptly advise the District Court whether it intends to pursue rulemaking. If the FEC elects this option, then the District Court should approve arrangements for the agency's prompt reconsideration of the matter through rulemaking. If the FEC elects instead to defend the current regulation, then the District Court should allow the parties to present arguments on Appellee's claims that the regulation cannot survive review under *Chevron* Step Two or *State Farm*, and then decide these issues in the first instance. Any decision by the District Court will be subject to expedited review by this court. The Clerk of the Court shall issue the mandate immediately and arrange for publication of this Judgment.

*Per Curiam*
**FOR THE COURT**
Mark J. Langer, Clerk
