**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRIS VAN HOLLEN, <br><br>          Plaintiff, <br><br>     v. <br><br> FEDERAL ELECTION COMMISSION, <br><br>          Defendant, <br><br>     v. <br><br> HISPANIC LEADERSHIP FUND, <br><br>          Intervenor Defendant, <br><br> and <br><br> CENTER FOR INDIVIDUAL FREEDOM, <br><br>          Intervenor Defendant. | Civil Action No. 1:11-cv-00766 (ABJ) |

**PLAINTIFF'S SUPPLEMENTAL BRIEFING ON REMANDED ISSUES**

For the reasons previously given and those set forth below, the challenged regulation, 11 C.F.R. § 104.20(c)(9), should be invalidated as unreasonable under *Chevron* Step Two, *see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984), and under the arbitrary and capricious standard, *see Motor Vehicle Manufacturers Ass'n of U.S., Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 42-43 (1983). Notwithstanding the deference the Court owes to the FEC's determination at this stage, *see Chevron*, 467 U.S. at 844, the Court is not required to "rubber stamp" the FEC. Rather, as exemplified in *Shays v. F.E.C.*, 414 F.3d 76 (D.C. Cir. 2005), the Court's role is to examine the

agency's action and rationale closely and to overturn agency action that is unreasonable.  At *Chevron* Step Two, the Court asks "whether the Commission's interpretation of [the statutory language] is reasonable 'in light of the language, legislative history, and policies of the statute.'" *Shays v. F.E.C.*, 337 F. Supp. 2d 28, 78 (D.D.C. 2004), *aff'd sub nom. Shays v. F.E.C.*, 414 F.3d 76 (D.C. Cir. 2005) ("*Shays I*"); *see also Berge v. United States*, 879 F. Supp. 2d 98, 119 (D.D.C. 2012) ("[T]he Court should not stand aside and rubber-stamp . . . the decision if it deems the decision inconsistent with a statutory mandate or it frustrates the congressional policy underlying a statute.") (internal quotation marks, brackets, and citation omitted).  Not only does the agency's interpretation need to be reasonable; but also, under the APA's arbitrary and capricious standard, the agency must articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.  *See State Farm*, 463 U.S. at 43; *see also Shays I*, 414 F.3d at 97 (holding that the FEC had given no rational justification for certain rules).  In applying *Chevron* Step Two and the APA, the Court "must reject administrative constructions of a statute that frustrate the policy that Congress sought to implement," *Shays v. F.E.C.*, 528 F.3d 914, 919 (D.C. Cir. 2008) ("*Shays III*") (internal quotation marks, brackets, and citations omitted), as is the case here.

There are ample grounds to invalidate the challenged regulation under *Chevron* Step Two and the APA, including the ten points below, which were advanced in Plaintiff's Motion for Summary Judgment ("Pl.'s MSJ") [Dkt. #20] and Plaintiff's Reply & Opposition to Defendant FEC's Cross-Motion for Summary Judgment ("Pl.'s Reply") [Dkt. #34]:

- The FEC's conclusion that a purpose test was necessary to avoid imposing unacceptable burdens on corporations and labor organizations was irrational and lacked cogent factual support.  *See* Pl.'s MSJ 29.

- A corporation's customers and investors are plainly not "contributors" within the meaning of the Act or common parlance.  *See id*. 30.

- Corporations and labor organizations could avoid the entire supposed burden the FEC cited through the simple expedient of establishing a segregated account pursuant to 2 U.S.C. § 434(f)(2)(E).  *See id*.

- Full disclosure of donors had been required without a "purpose" exception for four years under the FEC's original rule.  *See id*.

- The challenged regulation frustrates the intent of Congress by inviting corporations and labor organizations to evade BCRA's reporting requirements for electioneering communications ("ECs").  *See id*. 33.

- Requiring disclosure about those who spend money on ECs without requiring that those spenders disclose "all contributors" allows such spenders to run "election-related advertisements while hiding behind dubious and misleading names."  *See* Pl.'s Reply 10-11 (quoting *Citizens United v. F.E.C.*, 558 U.S. 310 (2010)).

- The FEC's statement that corporations and labor organizations cannot identify those persons who provided funds totaling $1,000 or more without an inordinate amount of effort is irrational and unsupported by the administrative record.  *See id*. 12.

- The self-serving, factually unsupported, and conclusory testimony of witnesses who do not wish to disclose who is funding an organization's ECs provides an insufficient factual basis for the FEC's regulation.  *See* Pl.'s MSJ 29.

- The FEC has never explained the inconsistency between the challenged regulation and 11 C.F.R. 104.20(c)(8) which imposes an "all contributors" requirement without any purpose test on individuals, partnerships, and unincorporated organizations that make ECs.  *See* Pl.'s Reply 13.

- The FEC also has not explained why, in promulgating § 104.20(c)(9), it incorporated "for the purpose of furthering" language from 2 U.S.C. § 434(c)(2), which addresses disclosure requirements related to "independent expenditures," when Congress did *not* use that language in 2 U.S.C. § 434(f)(2) regarding EC disclosure requirements.  *See* Pl.'s MSJ 12.

In addition, the regulation should be invalidated because:  (1) the FEC failed to show in its Explanation and Justification ("E & J") that limiting disclosure to those contributors who give "for the purpose of furthering" ECs would, in fact, reveal the sources of funding for such disbursements as required by BCRA; and (2) the E & J is devoid of any finding that the

3

challenged regulation would in fact lead to the disclosure of donors who sought to further ECs. Plaintiff will only address, here, these two additional arguments.

I. **The FEC's Stated Objective—To Limit Disclosure to Contributors Who "Actually Support" Particular Electioneering Communications—Is Arbitrary and Capricious Because It Flouts BCRA's Language and Purpose.**

The FEC's E & J posited that § 104.20(c)(9) would "appropriately provide[] the public with information about those persons who actually support the message conveyed" by ECs. FEC, Final Rule and Explanation and Justification on Electioneering Communications ("E & J"), 11 C.F.R. Part 104, 114, 72 Fed. Reg. 72899-01, 72911 (Dec. 26, 2007).  But, whether or not the purpose test would actually achieve that narrow objective (*see* Point II below), that objective arbitrarily diverges from and dilutes BCRA's broader objective.  BCRA was not enacted merely to provide the public with information "about those persons who actually support the message conveyed by ECs." *Id*.  Rather, the point of BCRA's EC disclosure requirements is to identify more broadly whose money the EC spender was using.  *See* Pl.'s MSJ 4 n.2 (quoting floor statements of Senators Jeffords, Snowe, and Feinstein).

Congress took this approach in BCRA for two principal reasons:  First, Congress concluded that it was relevant for citizens to know the objective facts of whose money EC spenders were using, regardless of those contributors' subjective intent.  *See id*.  And, second, it is inferable that Congress concluded that a disclosure requirement triggered by an inquiry into subjective intent would be prone to evasion.  *See Shays III*, 528 F.3d at 927 ("BCRA reflects the hard lesson of circumvention Congress has learned from the entire history of campaign finance regulation.") (internal quotation marks and citation omitted).  Thus, the regulation is an unreasonable constriction of BCRA.

BCRA's language supports this conclusion. It requires "[e]very person who makes a disbursement *for* the direct costs" of producing and airing ECs in an aggregate amount in excess of $10,000 in a calendar year to disclose the "names and addresses of all contributors who contributed . . . $1,000 or more . . . ." 2 U.S.C. § 434(f) (emphasis added). BCRA used the word "for" solely in relation to identifying the person making the EC, not to the contributors to that person. If Congress had meant to mandate disclosure of only those contributors who contributed *for* the direct costs of producing and airing ECs, it certainly knew how to do this, and it could have done so by saying "all contributors who contributed" $1,000 or more "*for* such ECs." Congress did not do so. *Cf. Shays I*, 414 F.3d at 108 ("[W]hen BCRA says 'made,' we presume, absent compelling indication otherwise, that it means 'made' and not 'made for a fee.'"); *T.I.M.E., Inc. v. United States*, 359 U.S. 464, 470-71 (1959) (court would not impute Congressional intention to create a right of reparation in statutory provision from which it was omitted, where Congress specifically provided for right in another provision of the same statute); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 573 (1979) (refusing to imply private remedy in statute because when Congress wished to provide a private damage remedy, it did so expressly).

II.  **The Challenged Regulation Is Arbitrary and Capricious Because the FEC Adduced No Evidence To Support Its Assumption That the Purpose Test Will Lead to Disclosure of Donors Who Harbor a Purpose of Furthering Electioneering Communications.**

Not only did the FEC arbitrarily constrict BCRA's disclosure objectives, the FEC's E & J fails to adduce evidence that the challenged regulation would even achieve the narrower objective the FEC, mistakenly, articulated. The FEC, it is now said, meant the challenged regulation to exclude only donors who give "for purposes *entirely unrelated* to the making of ECs." E & J at 72911; *see also* Statement of Comm'r Steven T. Walther Regarding the Petition for Rulemaking to Update 11 C.F.R. § 104.20(c)(8) and (c)(9) Filed by the Center for Individual

Freedom ("Walther Statement"), Mar. 7, 2013, 3-4.  The FEC Commissioners now say that the stated objective of the FEC was not to shield donors whose actual purpose (in whole or in part) was to support ECs.  *See* Statement of Comm'r Ellen L. Weintraub on the Petition for Rulemaking filed by the Center for Individual Freedom ("Weintraub Statement"), Mar. 7, 2013, 1 ("The regulation has been erroneously interpreted to obviate any disclosure obligations except when the donor earmarks a contribution for a specific electioneering communication – which, naturally, donors rarely do.")  The FEC, however, cited no evidence or data, as required by the APA, *see, e.g.*, *Shays III*, 528 F.3d at 928-29, to support any conclusion that adding the "for the purpose of furthering" language would, in fact, lead to full disclosure of donors who give for reasons related to the making of ECs.

In fact, the challenged regulation has led to little to no disclosure.  *See* Pl.'s MSJ 14-15; Pl.'s Reply 11; FEC Answer [Dkt. #16] at ¶¶ 30-31.  In the 2012 elections, non-profit corporations and labor unions reported spending approximately $14 million on ECs.  These EC spenders reported only about $1.5 million from contributors—about 10% of what they spent.[1]  *See* Nonprofit Electioneering Communications and Disclosure in 2012 cycle, available at http://www.opensecrets.org/outsidespending/electioneering_2012.php (last visited April 8, 2013).  Commissioner Weintraub, one of two remaining commissioners who participated in the rulemaking, has stated that "this result is not what the Commission intended when it promulgated the rule.  It is also plainly not what Congress had in mind when it passed the relevant provisions of [BCRA], which were designed to significantly *expand* disclosure requirements with respect to

---

[1]   One corporation, Mayors Against Illegal Guns reported spending roughly $175,000 in ECs, but reported contributions of almost $3.4 million.  The $1.5 million figure includes only this $175,000 as it is irrelevant to the question at hand that MAIG collected far more than it spent on ECs.

electioneering communications.  The rule has been widely misconstrued to undermine that goal." *See* Weintraub Statement 2 (emphasis in original).

Promulgating a rule that can be "widely misconstrued" so as to effectively exempt corporations and labor organizations from BCRA's EC donor disclosure provisions "runs completely afoul" of the BCRA sponsors' goal to ensure that the public is informed of the identity of persons whose money EC spenders use.  *Shays*, 337 F. Supp. 2d at 63.  "[T]herefore the regulation is entitled to no deference" at *Chevron* Step Two.  *Id.*; *see also National Gypsum Co. v. U.S. E.P.A.*, 968 F.2d 40, 44, 47 (D.C. Cir. 1992) (agency "must at least give a reasoned explanation for its assumption"); *Missouri Pub. Serv. Comm'n v. F.E.R.C.*, 337 F.3d 1066, 1070 (D.C. Cir. 2003).

## CONCLUSION

For these reasons, and those set forth in earlier briefs, Plaintiff respectfully urges the Court to declare that the challenged regulation, 11 C.F.R. § 104.20(c)(9), is unreasonable, arbitrary and capricious, and contrary to law.  In light of the FEC's total inability to act— showcased by its failure to appear in the Court of Appeals in this litigation and the still pending post-*Citizens United* rulemaking—Plaintiff respectfully requests that the regulation be vacated, otherwise the invalidated regulation could remain in force indefinitely.  In applying APA arbitrary and capricious review, the D.C. Circuit does "not hesitate[] to vacate a rule when the agency has not responded to empirical data or to an argument inconsistent with its conclusion." *Comcast Corp. v. F.C.C.*, 579 F.3d 1, 8 (D.C. Cir. 2009).  Vacating § 104.20(c)(9) would not be "disruptive," *see Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993); as this Court has recognized, "[p]rior to the promulgation of the regulation that was struck down, there was a valid regulation in effect implementing the BCRA's disclosure

requirement." Mem. Op. and Order denying stay [Dkt. #61] at 3 (citing 11 C.F.R. § 104.20(c) (effective Feb. 3, 2003 to Dec. 25, 2007); 68 Fed. Reg. 404, 419 (Jan. 3, 2003)).

Dated this 8th day of April, 2013.

Respectfully submitted,

/s/ Roger M. Witten

| | |
|---|---|
| Fred Wertheimer (Bar No. 154211)<br>DEMOCRACY 21<br>2000 Massachusetts Ave, N.W.<br>Washington, D.C.  20036<br>(202) 355-9610 | Roger M. Witten (Bar No. 163261)<br>Fiona J. Kaye<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>7 World Trade Center<br>New York, NY  10007<br>(212) 230-8800 |
| Donald J. Simon (Bar No. 256388)<br>SONOSKY CHAMBERS SACHSE<br>  ENDRESON & PERRY, LLP<br>1425 K Street, N.W., Suite 600<br>Washington, D.C.  20005<br>(202) 682-0240 | Trevor Potter (Bar No. 413778)<br>J. Gerald Hebert (Bar No. 447676)<br>Paul S. Ryan (Bar No. 502514)<br>Tara Malloy (Bar No. 988280)<br>CAMPAIGN LEGAL CENTER<br>215 E Street N.E.<br>Washington, D.C.  20002<br>(202) 736-2200 |
| Scott L. Nelson (Bar No. 413548)<br>PUBLIC CITIZEN<br>  LITIGATION GROUP<br>1600 20th Street, N.W.<br>Washington, D.C.  20009<br>(202) 588-1000 | |

*Attorneys for Plaintiff Chris Van Hollen*