## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRIS VAN HOLLEN, )<br><br>                     Plaintiff, )<br>v.                              )<br><br>FEDERAL ELECTION COMMISSION, )<br><br>                     Defendant, )<br><br>and                             )<br><br>CENTER FOR INDIVIDUAL FREEDOM, )<br><br>                     Defendant, )<br><br>and                             )<br><br>HISPANIC LEADERSHIP FUND, )<br><br>                     Defendant. ) | Civ. A. No. 1:11-cv-00766 (ABJ) |

## REPLY BY THE CENTER FOR INDIVIDUAL FREEDOM TO OPPOSITIONS BY THE FEC AND VAN HOLLEN TO THE MOTION FOR LEAVE TO FILE AMENDED AND SUPPLEMENTAL ANSWER AND CROSSCLAIMS

Defendant Center for Individual Freedom ("CFIF"), having intervened as of right, has moved for leave to amend and supplement its answer to plead three conditional crossclaims that will become important if, contrary to CFIF's expectation, the regulation challenged in this action is invalidated.  Contrary to the oppositions of Plaintiff Van Hollen and Defendant Federal Election Commission ("FEC"), the crossclaims (1) are ripe and must be considered before any

vacatur of the challenged rule, (2) are properly pleaded by CFIF as an intervenor as of right, and (3) need not delay appellate review of any *Chevron* Step 2 ruling.[1]

## I.    The Crossclaims Are Ripe and Would Logically Precede Any Decision to Vacate 11 C.F.R. § 104.20(c)(9).

Both Van Hollen and the FEC take issue with the "contingent" character of CFIF's proposed crossclaims, complaining that CFIF seeks adjudication of its claims only if this Court sustains Van Hollen's *Chevron* Step 2 challenge to the regulation.  CFIF's claims are perfectly proper, however.  "Simply because the outcome of one claim is contingent upon the outcome of another claim in the case does not mean that the first claim cannot be alleged or that the first claim is not ripe."  *Dimensional Music Publ'g, LLC v. Kersey ex rel. Estate of Kersey*, 448 F. Supp. 2d 643, 653 (E.D. Pa. 2006); *see also RCI Ent'mt (San Antonio) v. City of San Antonio*, No. 5:06-cv-00048, 2006 WL 1149173, at *3 (W.D. Tex. Apr. 14, 2006) ("Inconsistent and contingent claims pleaded in the alternative . . . are ripe and do establish a judicially cognizable case or controversy."); *In re Tyco Int'l Ltd. Multidistrict Litig. (MDL 1335)*, No. 03-1343-B, 2004 WL 524429 (D.N.H. Mar. 16, 2004) (company's contribution claim against former CEO held ripe even though contingent on ERISA and securities litigation pending against the company); *cf. United States v. Kales*, 314 U.S. 186, 196 (1941) ("The statement that upon the happening of the contingency the claim will be prosecuted is not inconsistent with the present assertion of it.").  In some cases, parties have been *required* to advance "anticipatory pleading[s]" based on "the . . . consequences that would flow from a ruling in [their opponents'] favor" or risk forfeiting their position.  *See C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 765 (8th Cir. 2012).

---

[1]    *Chevron, U.S.A. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984).  References to the "Step 2" issue include the similar issues arising under the Administrative Procedure Act's arbitrary-and-capricious standard. *See, e.g.*, *S. Coast Air Quality Mgmt. Dist. v. EPA*, 554 F.3d 1076, 1080 (D.C. Cir. 2009).

The FEC argues that, as a matter of "prudential ripeness," this Court should decline to entertain the crossclaims, leaving CFIF to file a separate lawsuit after the outcome here is known.  But Van Hollen's action for judicial review invokes this Court's authority as a court of equity.  *See* Van Hollen Compl. ¶ 37 (Doc. #1) (seeking declaratory relief); *cf. U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994) (noting "th[e] equitable tradition of vacatur").  A "court of equity does not 'do justice by halves,' and will prevent, if possible, a multiplicity of suits . . . ."  *Schaffer v. Carter,* 252 U.S. 37, 48 (1920) (collecting authority); *Rice & Adams Corp. v. Lathrop,* 278 U.S. 509, 515 (1929) ("[A] court of equity ought to do justice completely.").  The FEC's "prudential" theory invites the Court to depart from these settled principles—doing only partial justice and fostering a multiplicity of suits—even though these same goals find expression throughout the federal rules.  *See* Fed. R. Civ. P. 19 advisory committee's note (1966) (joining all parties needed for just adjudication serves to provide "complete relief" and avoid "repeated lawsuits"); Fed. R. Civ. P. 24 advisory committee's note (1966) (explaining that Rule 19's goals apply equally to intervention under Rule 24).

Van Hollen asserts that CFIF's crossclaims conflict with this Court's earlier decision to strike down the statute without further inquiry.  Not so.  This Court originally ruled that the challenged regulation was clearly foreclosed by the underlying statute.  Thus, it was no surprise that the Court struck down a regulation it deemed flatly contrary to law.  *But see North Carolina v. EPA*, 550 F.3d 1176, 1177 (D.C. Cir. 2008) (per curiam) (on rehearing) (rule left in effect despite "several fatal flaws in the rule").  The D.C. Circuit has now established, however, that 2 U.S.C. § 434(f) does not preclude 11 C.F.R. § 104.20(c)(9), and it has remanded for this Court to determine whether the regulation is reasonable in light of the rulemaking record and the FEC's findings and explanations.  CFIF submits that the regulation is validly supported, but if the Court

were to take a different view, it would not follow that the regulation must be vacated.  *See Allied-Signal v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993); *see generally* Kristina Daugirdas, Note, *Evaluating Remand Without Vacatur: A New Judicial Remedy for Defective Agency Rulemakings*, 80 N.Y.U. L. Rev. 278, 283 (2005) (discussing the D.C. Circuit's practice of remanding many regulations without vacatur).  Instead, the Court should take care to minimize the "disruptive consequences of an interim change that may itself be changed." *EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7, 37 (D.C. Cir. 2012) (citation omitted).

The three crossclaims present issues that should be considered if that remedial question arises.  The first crossclaim alleges that the FEC's failure to conduct a curative rulemaking, either on its own initiative or in response to the CFIF petition, was arbitrary and contrary to law.  The FEC's opposition contends that this issue would be mooted if the Court were to invalidate the regulation.  But, at that point, the FEC would have to decide whether to conduct a rulemaking or allow the regulation to fail.  A ruling sustaining the crossclaim—holding that the failure to conduct a rulemaking was unlawful—would address that live question.

The second crossclaim concerns a matter that arose following this Court's first ruling, when CFIF sought a stay pending appeal to prevent disruption and uncertainty.  This Court refused a stay on the view that there was no uncertainty because striking down the existing regulation had resurrected "a *valid* regulation" that previously had governed.  Mem. Op. & Ord. at 3 (Doc. #61) (emphasis added).  The second crossclaim now alleges that the regulation this Court presumed "valid" actually is invalid.  Such invalidity would call for either retaining the existing regulation pending FEC action or invalidating both the pre-2007 and post-2007

regulations.  *See Schurz Comm'ns, Inc. v. FCC*, 982 F.2d 1043, 1056-57 (7th Cir. 1992) (Posner, J.) (shaping a remedy to avoid resurrecting old rules that "no one defend[ed]").

And as the third crossclaim avers, it would be no answer to say that CFIF and other corporations should just comply with the underlying statutory language.  *See* 2 U.S.C. § 434(f).  Such an outcome would violate the First Amendment because, absent regulatory guidance, section 434(f) would be unconstitutionally vague.  The FEC points out that CFIF's existing answer already pleads this claim as a defense.  FEC Opp. at 10 (Doc. #88).  But by expressly pleading it as a crossclaim, CFIF makes clear that affirmative relief in the form of a declaratory judgment is sought.  Again, this Court will be positioned to do complete justice without fostering a multiplicity of different lawsuits.

## II.    Intervenor CFIF Is Entitled to Plead Crossclaims Under the Same Standards as an Original Defendant.

Van Hollen asserts that, because CFIF is an intervenor rather than an original defendant, it is categorically barred from developing any issue not raised by the original parties.  *See, e.g.*, Van Hollen Opp. at 2 (Doc. #86).  To the contrary, however, the general rule is that an intervenor—particularly an intervenor as of right—"participates on an equal footing with the original parties to a suit."  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003) (citation omitted); *District of Columbia v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132 (D.C. Cir. 1985) ("Intervenors under Rule 24(a)(2) assume the status of full participants in a lawsuit and are normally treated as if they were original parties once intervention is granted."); *Schneider v. Dumbarton Devel., Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985) ("When a party intervenes [under Fed. R. Civ. P. 24], it becomes a full participant in the lawsuit and is treated just as if it were an original party."); *Hallmark Cards, Inc. v. Lehman*, 959 F. Supp. 539, 541 n.1

(D.D.C. 1997) ("The intervenor is to be treated as if it were an original party to the claim once the intervention has been allowed.").

Like any other full participant, moreover, "an intervenor of right may assert a cross-claim." *Consolo v. Fed. Maritime Comm'n,* 383 U.S. 607, 617 n.14 (1966); *see also I.C.C. v. Atl. Coast Line R.R. Co*., 383 U.S. 576, 597 (1966) (an intervenor may "press its action . . . by a counterclaim after intervention in the [primary] action"). Indeed, "the general view is that [an intervenor as of right] would be entitled to assert any claim it had against the original parties." Note, *Recent Case*, 67 Harv. L. Rev. 1265, 1265 (1954), *quoted in* Charles Alan Wright et al., Federal Practice & Procedure, § 1921 (3d ed.).

Van Hollen cites language from *Illinois Bell Telephone Co. v. FCC,* 911 F.2d 776 (D.C. Cir. 1990), for the sweeping notion that an intervenor can never develop new issues. But *Illinois Bell Telephone* does not govern here. That decision reflected concern to avoid circumvention of a statutory appellate review process that operated under a strict "time limitation[] for filing a petition for review." *Id.* at 786; *see also* 28 U.S.C. § 2344 (petitions from agency orders). It has no application to intervention writ large; indeed, Van Hollen has pointed to no case where the D.C. Circuit has applied the reasoning of *Illinois Bell Telephone* outside petitions for appellate review. This noticeable gap in Van Hollen's supporting authority should come as no surprise. Unlike newcomers in a direct petition from agency action, intervenors in trial-court litigation may—indeed, are *expected* to—present issues that would otherwise go undeveloped by the original parties. *See* Fed. R. Civ. P. 24(a) (intervention under Rule 24(a) is available only on a showing that the existing parties do not "adequately represent [the prospective intervenor's] interest"). Even on its own terms, moreover, *Illinois Bell Telephone* does not establish the categorical rule Van Hollen proposes. *See Synovus Fin. Corp. v. Bd. of Governors of the Fed.*

6

*Res. Sys.*, 952 F.2d 426, 434 (D.C. Cir. 1991) (allowing an intervenor to raise new issues and ruling that "the statement in *Illinois Bell* should not be applied categorically.").

## III.    CFIF's Crossclaims Need Not Delay Appellate Review.

The oppositions do not deny that the first crossclaim challenging the FEC's failure to conduct a rulemaking is being offered at the earliest possible moment.  The FEC points out that the crux of the third crossclaim—that striking down the regulation would render the underlying statute unconstitutional—was presented in CFIF's original answer.  In theory, the second crossclaim, attacking the regulation that would be resurrected if the challenged regulation is struck down, could have been pleaded earlier.  But the FEC and Van Hollen do not suggest that it would make sense to litigate any of these issues until the Court rules on the Step 2 issues.  Thus, there can be no claim of prejudicial delay.  Instead, the oppositions assert that allowing the crossclaims may delay appellate review of the Step 2 ruling.  Those arguments are, to say the least, greatly exaggerated.

If the Court allows the crossclaims to be pleaded and then rules that the challenged regulation fails Step 2 review, it will have several options to allow an immediate appeal.  The Court could certify its ruling for immediate appeal as a "substantial" and "controlling issue of law."  *See* 28 U.S.C. § 1292(b).  In the unlikely event the Court found an obstacle to invoking section 1292(b), it could consider authorizing an immediate appeal under Fed. R. Civ. P. 54(b).  Or Van Hollen might seek a preliminary injunction under Fed. R. Civ. P. 65, which would be subject to immediate appeal under 28 U.S.C. § 1292(a).

In short, allowing CFIF to plead its crossclaims is not likely to impair this Court's broad authority to provide for immediate appellate review of a ruling that the regulation fails Step 2.  Of course, the Court also might conclude that the crossclaims present substantial issues that

should be resolved before an appeal.  But it would be perverse to deny leave to plead the crossclaims because of their potential merit and importance.

## CONCLUSION

This Court's mandate is to do complete justice and avoid fostering needless litigation. *See* Fed. R. Civ. P. 1.  That mandate is particularly important here because the present FEC remains in gridlock and is powerless to take prompt or decisive action to protect speakers like CFIF.  Because CFIF's three crossclaims raise important concerns and will provide a basis for complete justice, the motion for leave to amend should be granted.


April 18, 2013                                    Respectfully submitted,

                                                  _____/s/ Thomas W. Kirby_____
                                                  Jan Witold Baran (D.C. Bar No. 233486)
                                                      E-mail: jbaran@wileyrein.com
                                                  Thomas W. Kirby (D.C. Bar No. 915231)
                                                      E-mail: tkirby@wileyrein.com
                                                  Caleb P. Burns (D.C. Bar No. 474923)
                                                      E-mail: cburns@wileyrein.com
                                                  Andrew G. Woodson (D.C. Bar No. 494062)
                                                      E-mail: awoodson@wileyrein.com
                                                  WILEY REIN LLP
                                                  1776 K St. NW
                                                  Washington, D.C. 20006
                                                  202.719.7000

                                                  *Counsel for Center for Individual Freedom*