**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CHRIS VAN HOLLEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 1:11-766 (ABJ) |
| | ) | |
| v. | ) | |
| | ) | FEC'S SUPPLEMENTAL MEM. |
| FEDERAL ELECTION COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT FEDERAL ELECTION COMMISSION'S RESPONSE
TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM**

Anthony Herman
General Counsel

Lisa J. Stevenson (D.C. Bar No. 457628)
Deputy General Counsel – Law

Kevin Deeley
Acting Associate General Counsel

Harry J. Summers
Assistant General Counsel

Holly J. Baker
Attorney

Seth Nesin
Attorney

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street, NW
Washington, DC  20463
Telephone:  (202) 694-1650

**TABLE OF CONTENTS**

Page

I.  VAN HOLLEN'S "ADDITIONAL" ARGUMENTS LACK MERIT ......................... 1

    A.  The Regulation's "Purpose of Furthering Electioneering Communications" Standard Is a Reasonable Construction of an Ambiguous Statute Entitled to Deference ........................................... 2

    B.  The Commission Relied Upon Ample Evidence in Promulgating the Rule and Fairly Applied Congressional Intent to Unforeseen Circumstances ........................................................................................ 3

II.  THE SCOPE OF SECTION 104.20(c)(9) CHANGED FOLLOWING *CITIZENS UNITED* ............................................................................................. 5

III. CONCLUSION ................................................................................................... 9

The Court should uphold 11 C.F.R. § 104.20(c)(9), the Federal Election Commission's ("Commission" or "FEC") regulation governing donor disclosures by corporations and unions that make electioneering communications, because the rule represents a reasonable agency interpretation of an ambiguous statute.  The Commission adapted the disclosure regime to take into account two Supreme Court decisions striking down the electioneering communication provision in FECA and permitting labor unions and corporations to make electioneering communications.  The adapted language plaintiff Chris Van Hollen challenges here was drawn from another disclosure provision passed by Congress, and the Commission's rule carefully balances competing interests, as any regulatory implementation of the statute must.  It is a reasonable decision supported by ample evidence.

## I.    VAN HOLLEN'S "ADDITIONAL" ARGUMENTS LACK MERIT

Plaintiff Van Hollen's supplemental brief begins with a rehash of flawed arguments advanced in prior filings.  Having already demonstrated the flaws in those arguments and consistent with this Court's March 18 Minute Order, the Commission will not address them again here.[1]  Van Hollen devotes the remainder of his brief to two "additional arguments" and a conclusion about the appropriate remedy should the Court find the regulation unlawful.  (Plaintiff's Supplemental Briefing on Remanded Issues ("Pl's Supp. Br.") at 4-8 (Doc. No. 87).)  These arguments are also based to a significant extent on points Van Hollen has made in earlier briefs, but the Commission nevertheless briefly responds to them here.  Van Hollen effectively attempts to relitigate whether the Commission's regulation passes muster at *Chevron* step one.  These arguments must again fail.

---

[1]   (*See* Def. FEC's Mem. of P&As in Supp. of its Mot. for Summ. Judg. and in Opp. to Pl.'s Mot. for Summ. Judg. ("FEC S.J. Mem.") (Doc. No. 24); Def. FEC's Reply in Supp. of Its Mot. for Summ. Judg. ("FEC Reply") (Doc. No. 40); Def. FEC's Reply to the Mots. of Hispanic Leadership Fund and Center for Individual Freedom (Doc. No. 42).)

### A. The Regulation's "Purpose of Furthering Electioneering Communications" Standard Is a Reasonable Construction of an Ambiguous Statute Entitled to Deference

Van Hollen argues that the Commission's regulation is unlawful because it conflicts with Congress's central purpose, which Van Hollen suggests was to provide the public with information about how sponsors of electioneering communications acquired funds to engage in such communications. (Pl's Supp. Br. at 4.) That argument is unsustainable.

Van Hollen's strained argument is premised on the suggestion that section 104.20(c)(9) requires the Commission to establish the "subjective intent" of a donor before disclosure is required. Not so, as the Commission has already demonstrated. (*See* FEC S.J. Mem. at 33 ("The regulation does not rely solely on statements (public or private) by donors, but applies objective standards to determine which donations meet the regulatory standard.").)

Van Hollen also argues that Congress would disapprove of the Commission's regulation because Congress would believe a purpose requirement "would be prone to evasion." (Pl's Supp. Br. at 4.) This argument falters as well. The language of the regulation was drawn from a different disclosure provision passed by Congress. 72 Fed. Reg. at 72911 n.22 ("The 'for the purpose of furthering' standard in 11 CFR 104.20(c)(9) is drawn from the reporting requirements that apply to independent expenditures made by persons other than political committees. *See* 2 U.S.C. 434(c)(2)(C), 11 CFR 109.10(e)(1)(vi)."). Given that Congress enacted one disclosure provision with an *express* purpose requirement, there is no reason to assume that Congress would believe section 104.20(c)(9) was unlawfully "prone to evasion."

Van Hollen further argues that if Congress had wanted a purpose requirement, "it certainly knew how to do this." (Pl's Supp. Br. at 5.) But at the time Congress passed BCRA, the overwhelming majority of corporations (and all labor unions) were prohibited from making

electioneering communications.  Congress would have had no reason to insert such language to govern disclosure by stock corporations, which are especially likely to have general treasury funds received from those who "do not necessarily support the corporation's electioneering communications."  72 Fed. Reg. 72899, 72911.

Lastly, Van Hollen's argument is at odds with his prior claim that Congress desired disclosure because it "recognized that persons who finance 'electioneering communications' often stand to benefit economically from the election or defeat of a candidate or acceptance or rejection of a bill, and that voters are in a better position to evaluate such communications when the identity of the financier has not been cloaked."  (Plaintiff's Motion for Summary Judgment at 23 ("Pl's S.J. Mem.") (Doc. No. 20).)  If the purpose of disclosure is to give voters information about donors who stand to benefit from a persuasive electioneering communication, then that goal would actually be thwarted if disclosure included donors who gave for unrelated purposes.  (*See* FEC S.J. Mem. at 33 ("[S]uch a broad sweep of information would be misleading and could implicate privacy interests of those identified despite having no connection at all to the electioneering communications.").)

      **B.**      **The Commission Relied Upon Ample Evidence in Promulgating the Rule and Fairly Applied Congressional Intent to Unforeseen Circumstances**

Van Hollen claims that the Commission "fails to adduce evidence that the challenged regulation would even achieve the narrower objective the FEC, mistakenly, articulated" (Pl's Supp. Br. at 5), but this argument is unpersuasive and not entirely new.  Van Hollen has criticized the Commission in previous filings for alleged evidentiary deficiencies in its 2007 rulemaking regarding reporting burdens on regulated entities (*see*, *e.g.*, Pl's S.J. Mem. at 29 ("The FEC did not present any data or facts in its E&J to support this assertion or to quantify the

3

cost and effort involved.")). And the Commission has refuted these erroneous claims (*see* FEC Reply at 15-17).

Van Hollen now reconfigures his prior argument to focus on how much disclosure the proposed regulation would garner, claiming that the FEC was required to present rulemaking evidence that section 104.20(c)(9) would lead to "full disclosure of donors who give for reasons related to the making of [electioneering communications]." (Pl's Supp. Br. at 6.) But Van Hollen cites *no* authority for the proposition that the regulation must lead to "full" disclosure. Nor could he — especially given that Congress did not intend the speakers at issue to be making electioneering communications. Even if Congress could somehow have foreseen later Court rulings, "no legislation pursues its purposes at all costs." *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987). (*See* FEC S.J. Mem. at 26-28.) The Commission carefully balanced the interests in disclosure with other interests, including privacy, administrative burden, and the avoidance of potentially misleading disclosures. In doing so, the Commission evaluated considerable evidence relevant to these important interests. (*See, e.g.*, FEC Reply at 15-17 (describing comments and testimony considered by the FEC during the rulemaking process).)

In addition, "full disclosure" is an illusory goal. In this Court's earlier ruling, for example, the Court noted that if the statute were ambiguous, the Commission could permissibly limit disclosure to "donors" and thus certain funding sources need not be disclosed under the statute. *See Van Hollen v. FEC*, 851 F. Supp. 2d 69, 86 n.8 (D.D.C.) ("Is it really difficult to determine if dues paid in return for the benefits of membership are 'donations,' or if investors who pay for shares of stock and customers who pay for goods and services are a corporation's 'donors?'"), *rev'd sub nom. CFIF*, 694 F.3d 108 (D.C. Cir. 2012). If corporations and labor unions are permitted to use membership dues, investor funds, and profits to fund electioneering

4

communications, there will inevitably be electioneering communications that are not entirely accounted for by donations.[2]

Finally, Van Hollen relies on recent statistics about donor disclosure by corporations engaged in electioneering communications. (Pl's Supp. Br. 5-7.) But that information is irrelevant to whether the Commission issued a lawful regulation in 2007, because the reasonableness of the regulation can only be judged based upon the information that the agency had at that time and the agency's stated basis for its decision. (*See* FEC S.J. Mem. at 38-41; FEC Reply at 17-18.)[3]

## II. THE SCOPE OF SECTION 104.20(c)(9) CHANGED FOLLOWING *CITIZENS UNITED*

In remanding this case, the D.C. Circuit sought clarification from the Commission as to "the reference to 11 C.F.R. § 114.15 in § 104.20(c)(9)." *Ctr. for Individual Freedom ("CFIF")*

---

[2] Van Hollen also argues that if the Court finds section 104.20(c)(9) unlawful, it should vacate the regulation because such an order would purportedly not be "disruptive." (Pl's Supp. Br. at 7 (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993).) But as the Commission has already explained, the appropriate remedy should the Court find the regulation unlawful would be to remand to the agency without vacating the regulation. (*See* FEC S.J. Mem. at 43-45; FEC Reply 19-23.) Revival of the Commission's 2003 regulations would also not be appropriate. *See Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 553-54 (D.C. Cir. 1983) (declining to reinstate prior regulation). Because the 2003 regulations did not address the question of disclosure for corporate electioneering communications, they provide no guidance that is not already contained in the statute, and reviving those regulations could create substantial confusion. (*See* FEC Opp. to Motion for Leave to File Am. and Supp. Ans. and Cross Claims of Intervenor Def. CFIF at 3-4 n.1 (Doc No. 88).)

[3] Van Hollen also incorrectly relies (Pl's Supp. Br. at 5-7) on two recent statements by single Commissioners. Citation to those statements is impermissible because they relate to a separate, later rulemaking and because such views of a single Commissioner do not represent the position of the agency itself, which can only act through a majority of its members. *See* 2 U.S.C. § 437c(c); *Sprint Nextel Corp. v. FCC*, 508 F.3d 1129, 1132 (D.C. Cir. 2007) (finding that statements by individual Commissioners "are not institutional Commission actions"); *see also FTC v. Flotill Prods., Inc.*, 359 U.S. 179, 183 (1967) (stating that it is the "almost universally accepted common-law rule" that only a "majority of a collective body is empowered to act for the body").

*v. Van Hollen*, 694 F.3d 108, 111 (D.C. Cir. 2012). The Circuit could not discern the purpose of the cross reference and decided, on remand, to "leave it to the FEC in the first instance to explain the meaning and scope of 11 C.F.R. § 104.20(c)(9)." *Id.* As explained below, the cross reference is the product of the regime in place before *Citizens United*, when corporations and labor unions were barred from making electioneering communications. In the wake of the Supreme Court's decision, however, 11 CFR § 114.15 is an obsolete historical anomaly that has no functional purpose or regulatory meaning. In other words, *Citizens United* effectively read section 114.15 out of section 104.20(c)(9).

For decades, it was unlawful for corporations (and labor unions) to finance independent campaign expenditures with their treasury funds. 2 U.S.C. § 441b. In 1986, the Supreme Court held in *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 248-49 (1986) ("*MCFL*") that this prohibition was unconstitutional as applied to certain advocacy corporations. The corporations covered by the *MCFL* decision were those that had been formed for the sole purpose of promoting political ideas, could not engage in business activities, and could not accept contributions from for-profit corporations or unions. *Id.* at 263-64. The FEC, in its regulations, denominates such organizations as "qualified nonprofit corporations" or "QNCs." *See* 11 C.F.R. § 114.10.

In the Bipartisan Campaign Reform Act of 2002 ("BCRA"), Congress established a disclosure regime for "electioneering communication[s]" and prohibited corporations and labor unions from financing such communications with general treasury funds. 2 U.S.C. §§ 434(f)(3)(A)(i); 441b(a), (b)(2).[4] When, in 2003, the Commission promulgated the

---

[4] An "electioneering communication" under BCRA is any broadcast, cable, or satellite communication that refers to a clearly identified candidate for federal office, is publicly

implementing regulations regarding electioneering communications disclosure, there was no generally applicable provision for corporations or labor unions due to the statutory ban on such communications. The Commission determined, however, that, just as the Supreme Court in *MCFL* had permitted QNCs to make independent expenditures, the Constitution required that qualified nonprofit corporations should be permitted to finance and sponsor electioneering communications. Electioneering Communications, 67 Fed. Reg. 65190, 65203-04 (Oct. 23, 2002). These QNCs were required to comply with the same donor disclosure obligations as other entities that could pay for electioneering communications (such as unincorporated associations), specifically the reporting requirements in then-11 C.F.R. § 104.20(c)(7) and (8). *See* 11 C.F.R. § 104.20(c) (effective Feb. 3, 2003, to Dec. 25, 2007); Bipartisan Campaign Reform Act of 2002 Reporting, 68 Fed. Reg. 404, 412-13, 419 (Jan. 3, 2003). In *McConnell v. FEC*, the Supreme Court upheld the electioneering communications provisions on their face and agreed with the Commission that — consistent with *MCFL* — qualified nonprofit corporations must be permitted to make electioneering communications. 540 U.S. 93, 209-12 (2003).

Four years later, the Supreme Court held in *FEC v. Wisconsin Right to Life, Inc.*, ("*WRTL*"), that *all* corporations had a constitutional right to make electioneering communications that are not express advocacy or its functional equivalent. *See* 551 U.S. 449, 480-81 (2007). In response to *WRTL*, the Commission promulgated 11 C.F.R. § 114.15, permitting corporations to make such communications. *See* Electioneering Communications, 72 Fed. Reg. 72899, 72902-11 (Dec. 26, 2007).

The Commission also promulgated 11 C.F.R. § 104.20(c)(9), the subject of this lawsuit, to govern the disclosure of the sources of funds used by corporations and labor unions to finance

---

distributed within 60 days before a general election or 30 days before a primary election, and is targeted to the relevant electorate. *See* 2 U.S.C. § 434(f)(3)(A).

electioneering communications that were not functionally equivalent to express advocacy. *See* 72 Fed. Reg. at 72911-12. Section 104.20(c)(9) referred to section 114.15 because the disclosure regime contemplated by section 104.20(c)(9) applied only to the newly-permitted corporate and labor union communications. Qualified nonprofit corporations, on the other hand, continued to make disclosures just as they made them prior to *WRTL*. 72 Fed. Reg. at 72911 n.21 ("A QNC making an electioneering communication pursuant to 11 CFR 114.10, rather than pursuant to 11 CFR 114.15, would be required to report under 11 CFR 104.20(c)(7) or (8).") Thus, unions and the vast majority of corporations making electioneering communications were required to report under section 104.20(c)(9).[5]

In 2010, the Supreme Court held in *Citizens United v. FEC* that corporations could not constitutionally be prohibited from using general treasury funds to finance electioneering communications, even if those communications included the functional equivalent of express advocacy. 558 U.S. 310, 365-66 (2010).[6] Due to the prior ban on corporate and labor union communications, however, no current regulation explicitly contemplates such entities making electioneering communications equivalent to express advocacy. Nonetheless, the Commission's approach to an enforcement proceeding reveals that the Commission interprets section 104.20(c)(9) to apply at this time to all corporate and labor union electioneering

---

[5]  As the Commission has explained, 72 Fed. Reg. at 72911, one of the primary concerns behind the "purpose of furthering" construction in section 104.20(c)(9) was to prevent corporations from having to disclose shareholders who have acquired stock in the corporation. That concern is not present for unincorporated entities and for qualified nonprofit corporations, which by definition have no stockholders. *See* 11 C.F.R. § 114.10.

[6]  "Because *Citizens United* struck down the statutory bans on independent expenditures and electioneering communications for all corporations and labor organizations, the regulatory exceptions for QNCs are now superfluous" and the Commission has proposed to remove them. Independent Expenditures and Electioneering Communications by Corporations and Labor Organizations, 76 Fed. Reg. 80803, 80812 (proposed Dec. 27, 2011).

communications, even those that are functionally equivalent to express advocacy and therefore not made "pursuant to 11 CFR 114.15."[7] The five Commissioners who voted on that enforcement matter did not agree on whether to open an investigation of the particular alleged violation of section 104.20(c)(9), but they all treated that regulation as applicable without determining whether the advertisements were functionally equivalent to express advocacy.[8]

Thus, the Commission has required all corporations, including stock corporations but excepting QNCs, as well as labor unions to report donor information under section 104.20(c)(9) with respect to electioneering communications those entities are permitted to make — a category that after *Citizens United* includes communications that are the functional equivalent of express advocacy. Given that no provision of the regulations was promulgated in contemplation of corporate and labor union communications that are not made "pursuant to 11 CFR 114.15," the Commission's interpretation — which effectively reads the cross reference out of section 104.20(c)(9) — has reasonably filled the regulatory void.

### III. CONCLUSION

For the reasons above and in the Commission's prior briefs, 11 C.F.R. § 104.20(c)(9) is not contrary to law and the Court should grant summary judgment to the Commission.

---

[7] *See In the Matter of Freedom's Watch, Inc.* (FEC Matter Under Review 6002 ("MUR 6002")).

[8] *See* Statement of Reasons of Chairman Matthew S. Petersen and Commissioners Caroline C. Hunter and Donald F. McGahn, MUR 6002, at 4, 6-8 (Aug. 12-13, 2010), http://eqs.nictusa.com/eqsdocsMUR/10044274536.pdf (analyzing whether donor disclosure was required under section 104.20(c)(9) without determining whether the communication was equivalent to express advocacy); Statement of Reasons of Vice Chair Cynthia L. Bauerly and Commissioner Ellen L. Weintraub, MUR 6002, at 4-5 (Sept. 16, 2010), http://eqs.nictusa.com/eqsdocsMUR/10044280805.pdf (same); *see also* First General Counsel's Report, MUR 6002, at 3 n.1 (Mar. 12, 2010), http://eqs.nictusa.com/eqsdocsMUR/10044272054.pdf ("[T]he question of whether the advertisement at issue constitutes a permissible electioneering communication under *WRTL* is moot.")


Respectfully submitted,

| | |
|---|---|
| Anthony Herman<br>General Counsel | /s/ Seth Nesin<br>Holly J. Baker<br>Seth Nesin |
| Lisa J. Stevenson (D.C. Bar No. 457628)<br>Deputy General Counsel – Law | Attorneys |
| Kevin Deeley<br>Acting Associate General Counsel | COUNSEL FOR DEFENDANT<br>FEDERAL ELECTION COMMISSION<br>999 E Street, NW<br>Washington, DC 20463 |
| Harry J. Summers<br>Assistant General Counsel | Telephone:  (202) 694-1650<br>Fax:  (202) 219-0260<br>April 29, 2013 |