# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHRIS VAN HOLLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 1:11-0766 (ABJ) |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | |
| | ) | |
| Defendant, | ) | |
| and | ) | |
| | ) | |
| HISPANIC LEADERSHIP FUND, | ) | |
| | ) | |
| Defendant, | ) | |
| and | ) | |
| | ) | |
| CENTER FOR INDIVIDUAL | ) | |
| FREEDOM, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT HISPANIC LEADERSHIP FUND'S
## SUPPLEMENTAL BRIEFING ON REMANDED ISSUES

The Court should uphold 11 C.F.R. § 104.20(c)(9) as a reasonable agency interpretation

of an ambiguous statute.  We urge the Court to reject Plaintiff Van Hollen's reliance on recent

statements issued by individual Commissioners of the Federal Election Commission ("FEC")

that purport to explain the FEC's intentions in 2007.  These statements are more accurately

described as the individual views of Commissioners who are dissatisfied with the current

operation of the existing regulation, despite having voted for its approval in 2007.  *See* Pl's

Supplemental Briefing on Remanded Issues ("Pl.'s Supp. Br.") at 5-6 (Doc. No. 87); *see also*

*Chapman v. U.S.*, 500 U.S. 453, 464 n.4 (1991) (referring to subsequent legislative history as "an

unreliable guide to legislative intent").

1

I.      **Plaintiff Generally Disregards The Fact That This Matter Must Be Resolved Under Step Two of *Chevron***

This Court's task is to consider 11 C.F.R. § 104.20(c)(9) under Step Two of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) [hereinafter *Chevron*].  To the extent that Plaintiff attempts to re-litigate the *Chevron* Step One inquiry, largely by asserting (or reasserting) a variety of alleged Congressional intents and purposes that the D.C. Circuit held are not present in, and did not lead to, the statutory language at issue, those attempts must necessarily fail.  *See*, *e.g.*, Pl.'s Supp. Br. at 5 (presenting arguments parsing the language of 2 U.S.C. § 434(f)).

A.      **The Appropriate Standard Under *Chevron* Step Two Is Highly Deferential**

The Supreme Court explained the court's role in reviewing an agency interpretation of a silent or ambiguous statute as follows:

> If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 843 (footnotes omitted).  The Court held that it "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."  *Id*. at 843 n.11.  The D.C. Circuit Court of Appeals subsequently explained, "[a]s a practical matter, resolution of an ambiguity in a statute, if it has consequences, inevitably requires the agency to consider competing policy objectives; it is the reconciliation of such conflicts that is entitled to judicial deference under *Chevron*."  *Wagner Seed Co*. *v. Bush*, 946 F.2d 918, 923 (D.C. Cir. 1991).

Under the applicable "arbitrary and capricious" standard that guides this Court's review of the challenged regulation, "[t]he agency action will be upheld if [it] 'has considered the relevant factors and articulated a 'rational connection between the facts found and the choice made.'' The review is '[h]ighly deferential' and 'presumes the validity of agency action.'" *Nat'l Ass'n of Mfrs. v. NLRB*, 846 F. Supp. 2d 34, 49 (D.D.C. 2012) (quoting *Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1228 (D.C. Cir. 2007) (internal citations omitted).  Thus, even if the court deems the FEC's 2007 regulation to be a statutory interpretation with which the court may disagree as a matter of policy, the court must uphold the regulation so long as it is a permissible or reasonable interpretation of an ambiguous statute.

Plaintiff Van Hollen's ability to satisfy this weighty standard of review at Step Two of *Chevron* is especially unlikely in light of the Court of Appeals' conclusion that "it is doubtful that, in enacting 2 U.S.C. § 434(f), Congress even anticipated the circumstances that the FEC faced when it promulgated 11 C.F.R. § 104.20(c)(9)." *Ctr. for Individual Freedom "CFIF" v. Van Hollen*, 694 F.3d 108, 111 (D.C. Cir. 2012).  It would be quite extraordinary to find that the FEC acted unreasonably and in an arbitrary and capricious manner when filling a "gap" that Congress never anticipated.  Indeed, this court itself was dubious about the possibility that Van Hollen could satisfy the heightened standard of review at Step Two of *Chevron*.  *See* Tr. of Oral Arg. at 73:8-9 ("[T]he *Chevron I* decision is close to being the outcome determinative decision, or it may very well be the outcome determinative decision.").

**B.      The Court of Appeals Foreclosed Plaintiff's Attempt to Re-litigate the "Purpose Clause" Through Speculation and Inference.**

The Court of Appeals determined that Congress did *not* have an intention on the precise question at issue:

> It is doubtful that, in enacting 2 U.S.C. § 434(f), Congress even anticipated the circumstances that the FEC faced when it promulgated 11 C.F.R. § 104.20(c)(9). It was due to the complicated situation that confronted the agency in 2007 and the absence of plain meaning in the statute that the FEC acted pursuant to its delegated authority under 2 U.S.C. § 437d(a)(8) to fill "a gap" in the statute.

*CFIF,* 694 F.3d at 111, *citing Chevron,* 467 U.S. at 843 n.9.

Plaintiff Van Hollen nevertheless presents various arguments speculating as to what Congress' intent may have been, Pl.'s Supp. Br. at [4-5], and even asks this Court to "*infer*[] that Congress concluded that a disclosure requirement triggered by an inquiry into subjective intent would be prone to evasion."  *Id.* at 4 (emphasis added).  Speculation and inferences about what Congress may have intended, coupled with references to statements issued by individual Commissioners years after the adoption of the regulation at issue, cannot overcome the high hurdle established by Step Two of *Chevron*, in light of the Court of Appeals' holding.

Plaintiff does not demonstrate that five Presidentially-nominated Commissioners acted arbitrarily and capriciously when they engaged in an APA rulemaking that resulted in the approval of a regulation following notice, written comment, public hearings, and subsequent public consideration of a final rule.

**II.      The Reasonableness of the FEC's Regulation Is Determined By the 2007 Rulemaking Alone, and Not By Statements of Commissioners Issued Many Years Later**

Plaintiff attempts to distract this court's focus from the 2007 rulemaking record by referencing statements issued by individual Commissioners in 2013.  Pl's Supp. Br. at 5-6.  Van

Hollen cites these individual statements as evidence that the regulation at issue "has been erroneously interpreted" by the FEC since its adoption, and that this "result is not what the Commission intended when it promulgated the rule." *Id.* The cited statements, however, were issued by Commissioners who voted to approve the regulation at issue in 2007[1], but who have more recently made no secret of their desire to revise that regulation[2]. These Commissioners' votes also prevented the FEC from defending its regulation before the Court of Appeals. *See CFIF*, 694 F.3d at 111 (faulting the FEC for its "failure to participate in this appeal.").

With all due respect to these Commissioners, these statements – at least as presented by the Plaintiff – are analogous to the sort of post-enactment legislative history that the Supreme Court has consistently treated as unpersuasive. *See Chapman*, 500 U.S. at 464 n.4 (referring to subsequent legislative history as "an unreliable guide to legislative intent"); *Sullivan v. Finkelstein*, 496 U.S. 617, 631 (1990) (Scalia, J., concurring) ("'Subsequent legislative history' – which presumably means the post-enactment history of a statute's consideration and enactment – is a contradiction in terms. The phrase is used to smuggle into judicial consideration legislators' expressions not of what a bill currently under consideration means . . . but of what a law previously enacted means."); *Western Air Lines v. Bd. of Equalization*, 480 U.S. 123, 130 ("Appellants' attempt at the creation of legislative history through the post hoc statements of interested onlookers is entitled to no weight, however.").

The court's review of 11 C.F.R. § 104.20(c)(9) looks not to two Commissioners' current misgivings, but to the Commission's 2007 rulemaking that reasonably interpreted the underlying

---

[1] *See* Minutes Of An Open Meeting Of The Federal Election Commission, Dec. 14, 2007, http://sers.nictusa.com/fosers/showpdf.htm?docid=4981.
[2] *See* Minutes Of An Open Meeting Of The Federal Election Commission, Jan. 20, 2011, http://www.fec.gov/agenda/2011/approved2011_06.pdf (recording the Commission's three-to-three vote deadlock on the Notice of Proposed Rulemaking on Independent Expenditures and Electioneering Communications by Corporations and Labor Organizations).

statute.  The fact that the regulation may operate in a manner in which certain Commissioners now object, in light of more recent judicial decisions that yielded a changed legal regime and a very different political dynamic regarding the issue of disclosure, does not change the meaning (or lack of meaning) of the statutory language at issue or the reasonableness of the regulation adopted in 2007.

The question before this Court is *not* how much disclosure the challenged regulation yields, whether this amount is the right amount, or even how much disclosure the regulation should yield.  Moreover, the appropriate question is not whether the regulation being challenged is the best possible regulation, or whether it operates to the satisfaction of certain Commissioners.  Rather, the Court is tasked with reviewing the FEC's judgments as reflected in the 2007 rulemaking.  The FEC's judgments and policy decisions need only be plausible and consistent with the evidence before the Commission in 2007, or a reasonable interpretation of statutory language that the Court of Appeals held was, as a matter of law, "anything but clear." *CFIF*, 694 F.3d at 110.  The court's deference to the FEC's reasonable policy judgment is particularly critical here given that "it is doubtful that, in enacting 2 U.S.C. § 434(f)(1), Congress even anticipated the circumstances" faced by the FEC in 2007, in addition to the fact that the statute itself suffers from "the absence of plain meaning." *Id.* at 111.

Plaintiff Van Hollen's reliance on one Commissioner's recent assertion that the regulation at issue has been "widely misconstrued" is also unfounded.  The FEC's understanding and application of 11 C.F.R. § 104.20(c)(9) has remained consistent since 2007.  During the *Citizens United* litigation, for instance, the FEC advised the Supreme Court that "[t]he challenged disclosure provisions require the sponsor of an electioneering communication to identify itself to the Commission, disclose the amount spent on the advertisement *and any large*

*contributions earmarked to underwrite it . . . .*").  Brief for the Appellee at 39, February 2009,

*Citizen's United v. FEC,* 558 U.S. 310 (2010) (No. 08-205).  Thus, the regulation at issue has not

been "widely misconstrued" – it has been construed consistently since its adoption.  What has

changed is the ability of certain types of organizations to actually make electioneering

communications, and the desire of some Commissioners to rewrite the regulation in light of these

changed circumstances.  There is no evidence to support a claim that the FEC has acted

inconsistently, and therefore arbitrarily and capriciously, with respect to its interpretation or

application of the regulation at issue.


**III.    Conclusion**

　　　　The challenged regulation is the product of the deliberative rulemaking process,

conducted in accordance with all provisions and requirements of the APA, and approved by a

majority of the FEC in 2007.  This court should grant the Commission the deference it is due

under *Chevron* where an agency acts pursuant to authority delegated by Congress to adapt or

revise regulations in response "to the demands of changing circumstances."  *Rust v. Sullivan*, 500

U.S. 173, 187 (1991); *see CFIF*, 694 F.3d at 111 (quoting *Chevron*, 467 U.S. at 843-44) ("It was

due to the complicated situation that confronted the agency in 2007 and the absence of plain

meaning in the statute that the FEC acted pursuant to its delegated authority under 2 U.S.C. §

437d(a)(8) to fill "a gap" in the statute.")

　　　　The Commission's 2007 rulemaking reflects a policy determination of the FEC and is a

reasonable interpretation of an ambiguous statute.  If the Commission or Congress deem

11 C.F.R. § 104.20(c)(9) to be ineffectual in its present application, the appropriate solution is

Congressional or regulatory action, rather than judicial intervention declaring a federal agency's

policy decision to be unreasonable or arbitrary and capricious.


Dated: May 13, 2013                    Respectfully Submitted,

                                       /s/ Jason Torchinsky

                                       Jason Torchinsky (D.C. Bar No. 976033)
                                       Michael Bayes (D.C. Bar No. 501845)
                                       Christopher Winkelman
                                       HOLTZMAN VOGEL JOSEFIAK PLLC
                                       45 North Hill Drive
                                       Suite 100
                                       Warrenton, VA 20186
                                       Tel: (540) 341-8808
                                       Fax: (540) 341-8809

                                       *Counsel for Hispanic Leadership Fund*

# CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2013, I electronically filed the foregoing Hispanic Leadership Fund's Supplemental Briefing on Remanded Issues, with the Clerk of the Court using the CM/ECF system.

The following were served via electronic mail:

Counsel for the Plaintiff:

Roger Michael Witten - roger.witten@wilmerhale.com
Fiona J. Kaye - fiona.kaye@wilmerhale.com

Counsel for Defendant Federal Election Commission:

Harry Jacobs Summers - hsummers@fec.gov
Holly Jean Baker - hbaker@fec.gov
Kevin Deeley - kdeeley@fec.gov
Seth E. Nesin – snesin@fec.gov

Counsel for Defendant Center for Individual Freedom:

Thomas W. Kirby - tkirby@wileyrein.com

/s/ Jason Torchinsky

Jason Torchinsky